247 A.2d 430.

THE PRESERVATION SOCIETY OF NEWPORT COUNTY *vs.*
ASSESSOR OF TAXES OF THE CITY OF NEWPORT.

NOVEMBER 6, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J.   This petition was filed in the superior court pursuant to the provisions of G. L. 1956, §44-5-26, seeking relief from an assessment of taxes against certain real and personal properties of the petitioner, The Preser-

vation Society of Newport County, hereinafter referred to as the Society. The record discloses that the general assembly chartered the Society in 1946 for "* * * antiquarian, historical, literary, educational, artistic and monumental purposes, and for the purpose of preserving for posterity buildings, places and objects of historical, artistic, architectural and other interest * * *." It further appears that in 1949 the general assembly enacted a statute purporting to exempt from taxation all the real and personal property of the Society "* * * as long as the same shall be used for the purposes of said corporation."

The parties submitted the case to a justice of the superior court along with a stipulation as to the facts, and it was by that court certified to this court. The question certified by the superior court included seven separate inquiries as to whether certain specific properties owned by the Society were, under the facts as stipulated, being used "* * * for the purposes of said Society * * *." In this court, however, the parties appear to agree that the controlling issue with respect to all inquiries is: "Did the Petitioner, The Preservation Society of Newport County, in using its property in the manner set forth in the Stipulation as to Facts, use said property for the purposes of said Society under the exemption act of 1949?"

The taxes in dispute were assessed for the year 1964. It is conceded that the properties taxed were owned by the Society and comprise estates or buildings which are of historic, architectural, educational, and antiquarian interest. Two of these properties, the "White Horse Tavern," a tavern of colonial origin, and the "Rogers House," also of colonial origin, were leased by the Society, the first for operation by a restaurateur as a restaurant, and a portion of the second to the Newport chamber of commerce for office space. The rental income received from such leasing concededly was devoted to the purposes for which the Society

was incorporated. Two other properties owned by the Society, namely, "The Elms" and "Marble House" were residences built by members of the Newport summer colony at the turn of the century and are presently kept open for public inspection at a nominal charge. However, it is conceded that each of these premises on occasion was made available to groups for the conduct of social functions of one kind or another therein and that income in the form of donations was received for such use, it being conceded again that the income was used for the purposes of the Society.

Another of the properties assessed is known as "The Breakers" Parking Lot. This is a parcel of vacant land which is adjacent to an estate known as "The Breakers." This estate, which is leased by the Society, is open for tourist visitation at a nominal fee and has become one of the major tourist attractions in the city of Newport. "The Breakers" Parking Lot was acquired in fee by the Society and is used exclusively for free parking for those tourists who visit "The Breakers."

Taxes were also assessed on certain personal property of the Society. One of these properties is an automobile used by the employees of the Society in the course of conducting its business, and the remaining such personal property is office equipment which is used by the Society in the conduct of its business and the furnishings of several of the estates and buildings which it owns and maintains.

The respondent, in seeking to establish that the exemption has been lost by reason of these uses, contends that this court in *Preservation Society of Newport County* v. *Assessor of Taxes*, 99 R. I. 592, 209 A.2d 701, held that the Society's real and personal property was exempt from taxation under the provisions of G. L. 1956, §44-3-3 (8).[1] That

---

[1]The provisions of G. L. 1956, §44-3-3 (8), are identical with the pertinent provisions contained in G. L. 1938, chap. 29, §2, which is referred to in that case.

section provides, in pertinent part, that the buildings and personal estate of any corporation used for a school, academy, or seminary of learning and the land upon which said buildings stand and which immediately surrounds said buildings to an extent not exceeding one acre shall be exempt from taxation "* * * so far as the same is used exclusively for educational purposes * * *." The respondent argues that, therefore, the exemption applies only so long as the property is used *exclusively* for the educational purpose.

In this, respondent relies on the rule laid down in *Sisterhood of the Holy Nativity* v. *Tax Assessors*, 73 R. I. 445, 57 A.2d 184. There we said that it is the policy of this court to construe tax exemption statutes strictly in favor of the taxing authority and the question of whether a use is within the purposes for which the Society was incorporated must be construed strictly against the Society and in favor of taxation. Where the grant of the exemption requires that the pertinent use be exclusive, it may be that the rule of strict construction would prevail, and that to put the property to commercial use might sacrifice the exemption even though the income from such use is used for the furtherance of the corporate purposes.

This argument might be pertinent if in fact the exemption here granted was that provided for in §44-3-3 (8). There is no doubt that the question of exclusive use and the application of the doctrine of strict construction has given rise to the formation of a considerable body of law supporting the proposition that if the use to which the property is put to produce income is not within the corporate purposes, the mere fact that such income is devoted to the corporate purposes will not save the exemption.

Basically, the rule appears to be that the use of property by an exempt corporation, and not the use of the proceeds from the rental of the property, determines whether the

exemption may be granted or, if granted, will be lost by such a use. In *Moon Township Appeal,* 387 Pa. 144, 149, 127 A.2d 361, 364, the court stated the rule as follows: "On the other hand, however, there is equally no doubt but that property, even though owned by a body ordinarily tax exempt, is taxable if used by it for commercial purposes, or if rented to a lessee for a purely business enterprise and not a public use; this is true even though the rentals or other proceeds from the property are devoted to the tax exempt activities of the lessor * * *." This rule is followed in many jurisdictions, allowances being made only for the terms of the statute under consideration. *People ex rel. Paschen* v. *Hendrickson-Pontiac, Inc.,* 9 Ill.2d 250, 137 N.E.2d 381; *State Board of Tax Commissioners* v. *Indianapolis Lodge #17, Loyal Order of Moose, Inc.,* 245 Ind. 614, 200 N.E.2d 221; *Gifford Memorial Hospital* v. *Town of Randolph,* 119 Vt. 66, 118 A.2d 480; *Princeton University Press* v. *Borough of Princeton,* 35 N. J. 209, 172 A.2d 420.

However, it is true that in most of these jurisdictions and in others, there is also a tendency on the part of courts to make exception to this doctrine, particularly abandoning the strict construction view where the uses to which the property is put are reasonably necessary for the operation of the affairs of the exempt corporation, *Moon Township Appeal,* 425 Pa. 578, 229 A.2d 890, *People ex rel. Paschen* v. *Hendrickson-Pontiac, Inc., supra,* or where the use to which it is put, even though it provides no income to be used for the corporate purposes, is one that is reasonably necessary to make the operation of the exempt corporation effective and complete. *In the Matter of Pace College* v. *Boyland,* 4 N.Y.2d 528, 151 N.E.2d 900.

We cannot agree, however, that in *Preservation Society of Newport County* v. *Assessor of Taxes, supra,* we held that the tax exemption given the Society in 1949 was an exemption under the provisions of §44-3-3 (8). In that

case we considered the 1949 statute, which contained two pertinent sections, and held that it was enacted for a dual purpose. We recognized that sec. 3 of the charter of the Society did not in express terms authorize it to take and hold any property, real or personal, that might be necessary to give effect to its corporate purposes and was so vague and indefinite as to give rise to substantial doubt that the Society had authority to take and hold any property. At best, such a right would be found by necessary implication in sec. 3 of the charter, and we went on to say that sec. 1 of the 1949 act was "* * * intended to confer upon the society express authority to *take and hold for its corporate purposes* properties within the contemplation of the provisions of G. L. 1938, chap. 29, §2 * * *." (italics supplied)

However, we did say that the reference to §44-3-3 contained in that case "* * * was *not,* in our opinion, intended to vest the society with those characteristics necessary to bring the society within the purview of §2 of chap. 29 and thus exempt from taxation *thereunder* such properties as it might hold." (italics supplied) We said that were we to take such a view, we would be considering the enactment of sec. 2 of the 1949 act as having been a mere pointless gesture on the part of the legislature. Said sec. 2 reads: "The real and personal estate of The Preservation Society of Newport County, Newport, Rhode Island, shall be exempt from taxation as long as the same shall be used for the purposes of said corporation."

We hold then that the legislature, in enacting sec. 2, did not specifically require that the exemption be based on an exclusive use of the properties for the purposes of the corporation. Obviously, the legislature must have intended to give a broader exemption to the Society than that given to educational corporations under §44-3-3 (8).

We agree wholeheartedly with the basic rule of strict con-

struction of tax exemption statutes in favor of the taxing authority. However, as we said in *Preservation Society of Newport County,* the rule of strict construction is not to be applied so as to defeat a clear legislative intent to grant a particular exemption. Here it is clear that the legislature intended, in enacting sec. 2 of the 1949 act, to grant an exemption to the Society that was different from the exemption granted in §44-3-3 (8) and that the doctrine of strict construction should not be permitted to defeat that intention. Without intending to resort to hoary legalistic cliches, this is surely a case where, had the legislature intended to grant the Society an exemption limited as are those provided for in §44-3-3 (8), it could have expressly done so in clear and unmistakable terms.

We hold then that the action by the Society in renting or otherwise making available the premises known as "White Horse Tavern," "Rogers House," "The Elms," and the "Marble House" and using the rental income or donations received for such use constitutes a use of those properties within the contemplation of the provisions of sec. 2 of the 1949 act and does not void the tax exemption of the Society with respect to those properties.

We turn to consider the question whether the operation of "The Breakers" Parking Lot by the Society is a use of the property for the purposes of the Society as contemplated in sec. 2 of the 1949 act. We reiterate that we are not concerned in this case with whether the operation of the parking lot would be violative of the provisions of §44-3-3 (8), which prescribes that property, to remain exempt, must be used *exclusively* for the purposes of the exempt corporation. We are here concerned with a much broader test, for, as we have already noted, the exemption of the Society is one granted particularly by the 1949 act and does not require in its terms that the property held be used *exclusively* for the purposes of the Society.

The primary purpose for which the Society was incorporated is the preservation for posterity of buildings of historical, architectural, or other interest. Obviously if the Society is to accomplish its purpose, the buildings that are taken for such preservation must be made available for visitation and inspection by people interested in either the historical or architectural features thereof. Provision of space for the parking of vehicles used by visitors is absolutely essential to the accomplishment of that purpose. It is our opinion, in other words, that it would defeat the primary purpose for which the Society was incorporated were we to construe the 1949 tax exemption as a device for impeding and obstructing the availability of such buildings to public inspection and study.

In *Moon Township Appeal, supra,* the court was considering the extent of an exemption from taxes granted the Pittsburgh airport. The legislature exempted from taxation airport properties used for public purposes. The question was whether a restaurant, newsstand, and drugstore being operated by concessionaires were within the scope of the exemption as public uses. The court, holding that such properties were exempt, said: " 'There is likewise no question but that property the use of which is *reasonably necessary* for the efficient operation of the Airport, even though not indispensable or essential thereto, is also entitled to exemption. Nor can such property be denied exemption merely because it is rented out by the Airport and thereby yields a return which serves to reduce expenses, because, where the primary and principal use to which property is put is public, the mere fact that an income is incidentally derived from it does not affect its character as property devoted to a public use * * *.' "

It is true that the exemption in that case may be considered to be more restrictive than that granted in the instant case. However, it illustrates, in our opinion, the ba-

sic proposition of law to be applied and that is that property is within the exemption where it is reasonably necessary for the efficient and effective accomplishment of the purposes of the exempted corporation, in this case the Society. See also *In the Matter of Pace College* v. *Boyland, supra.*[2]

Clearly, we take the position that the exemption granted by the legislature to the Society is of wide latitude. Because we take this view, we do not hesitate to hold that the operation of "The Breakers" Parking Lot is one that is reasonably necessary and essential to the primary purpose of the Society, that is, the making available to the interested public of this classic specimen of Newport architecture. We hold then that the operation of the parking lot is within the purposes of the Society as contemplated in sec. 2 of the 1949 act.

In our opinion, there is no necessity for discussing the question whether the personal properties of the Society are being used for the purposes contemplated in sec. 2 of the 1949 act. Because we take the view that the other uses of the real property that have been considered herein are within the contemplation of the provisions of sec. 2 of the 1949 act, it follows that the motor vehicle, the office equipment, and the furnishings of the Society's buildings are also being so used.

We answer all seven of the questions certified to this court by the superior court in the affirmative.

*Corcoran, Peckham & Hayes, William W. Corcoran,* for petitioner.

*Joseph M. Hall,* Assistant City Solicitor, for respondent.

---

[2]For a case dealing with the operation of a parking lot by a religious institution where the exemption is based on exclusive use of the exempt property for religious purposes, see *Second Church of Christ Scientist* v. *City of Philadelphia,* 398 Pa. 65, 157 A.2d 54.