**DELTA AIRLINES, INC., et al.**

v.

**James T. NEARY, Jr., in his Capacity as Tax Assessor for the City of Warwick.**

**No. 2000–194–Appeal.**

Supreme Court of Rhode Island.

Dec. 7, 2001.

Brent Caning, William E. Reed, 3rd, Boston, Massachusetts/Gerald John Petros, Providence,/Steven M. Richard, Boston, Massachusetts, for Plaintiff.

Stephen J. MacGillivray, Newport, for Defendant.

Present: LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case arose from a dispute between the plaintiffs, Delta Airlines, Inc., and U.S. Airways, Inc. (the airlines), and the defendant, James T. Neary, Jr., in his capacity as tax assessor for the City of Warwick (the assessor), over the legality of municipal taxes assessed against the airlines for certain leasehold improvements at the Sundlun Terminal at T.F. Green Airport in the City of Warwick. The airlines have appealed a judgment of the Superior Court, granting the assessor's motion for

summary judgment and denying the airlines' motion for summary judgment. For the reasons stated herein, we sustain the appeal, vacate the judgment, and remand the case to the Superior Court with instructions to enter judgment in favor of the airlines.

### Facts and Procedural History

In December 1992, the Rhode Island Economic Development Corporation (EDC) created the Rhode Island Airport Corporation (RIAC), pursuant to G.L.1956 § 42–64–7.1, to operate and manage Rhode Island's state airports. *See In re Advisory Opinion to Governor,* 627 A.2d 1246, 1247–48 (R.I.1993). Although the State of Rhode Island retains title to T.F. Green Airport, RIAC entered into a thirty-year lease of the airport property from the state, beginning on July 1, 1993. The lease since has been extended an additional five years.

The Sundlun Terminal (terminal) was constructed at T.F. Green Airport between 1993 and 1996. In 1993, the airlines each entered into seventeen-year lease agreements with RIAC for portions of the terminal, and during the next three years they installed leasehold improvements, such as carpets, baggage carriers, counters and partitions in the terminal. By the terms of the airlines' lease agreements, all such improvements became the property of RIAC when construction was completed. Upon the termination of RIAC's lease with the state, all airport assets will be transferred to the state.

The airlines have paid taxes on a regular basis to the City of Warwick for personal property, such as office supplies, vehicles, and aircraft equipment since the outset of their operations at T.F. Green Airport. In 1997 and 1998, in its assessment of the airlines' "tangible personal property," the assessor included an assessment of the "leasehold improvements." This tax was assessed at a rate of $55 per square foot of area that each airline leased in the terminal.

The airlines appealed the 1997 and 1998 tax assessments to the Warwick Board of Assessment Review (board).[1] The board denied the appeal, and the airlines filed four petitions for relief from local tax assessment in the Superior Court, each airline filing a petition for each of the tax years now in dispute. The airlines claimed that lessees cannot be taxed on property that is otherwise exempt, as is the terminal by virtue of § 42–64–20, or alternatively, G.L.1956 § 44–3–3(1) and G.L.1956 § 44–4–4.1(5). The airlines also asserted that, in general, lessees cannot be held responsible for property taxes unless they expressly agree to pay them under the terms of the lease. After consolidating the four cases, the Superior Court denied the airlines' motion for summary judgment and granted the assessor's cross-motion, ruling as follows:

> "Clearly, Sections 42–64–20(a) and (b) did not entitle the plaintiffs to a broad-based exemption from municipal taxes at the expense of the municipality. Sections 42–64–20(a) and (b) state that Rhode Island Airport Corporation must make payments in lieu of real property taxes to municipalities 'during such times as the Rhode Island Airport Corporation derives revenue from the lease or operation of the projects.' Additionally, the Rhode Island Supreme Court has determined that a lessee is bound to pay taxes when the property is productive and yields income."

The airlines appealed the judgment to this Court. The RIAC and Anton Airfood of Rhode Island, Inc., another lessee at the

---

**1.** The airlines contested the 1999 assessment    in a separate appeal not under review here.

terminal, filed briefs as *amici curiae*, the former asserting that the state owns the improvements at issue, and the latter supporting the airlines' position.

## Standard of Review

■ In reviewing the Superior Court's judgment on the parties' motions for summary judgment, we examine the matter *de novo* and apply the same standards as those used by the trial court. *Woodland Manor III Associates v. Keeney*, 713 A.2d 806, 810 (R.I.1998) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996) and *Rotelli v. Catanzaro*, 686 A.2d 91, 93 (R.I.1996)); *see also Petrone v. Town of Foster*, 769 A.2d 591, 593 (R.I.2001) (per curiam). Summary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *Woodland Manor III Associates*, 713 A.2d at 810 (citing *Rotelli*, 686 A.2d at 93); *see also Petrone*, 769 A.2d at 593.

## Tax Exemption

■ The airlines argued, first, that the improvements erected in the terminal, like all the property constituting T.F. Green Airport, are exempt from taxation. This Court repeatedly has held that we are constrained to strictly construe statutory tax exemptions in favor of the taxing authority. *Preservation Society of Newport County v. Assessor of Taxes of Newport*, 104 R.I. 559, 564–65, 247 A.2d 430, 434 (1968). But, "the rule of strict construction is not to be applied so as to defeat a clear legislative intent to grant a particular exemption." *Id.* at 565, 247 A.2d at 434. In any event, the party claiming the tax exemption bears the burden of demonstrating that the statute reveals such an intent. *Fleet Credit Corp. v. Frazier*, 726 A.2d 452, 454 (R.I.1999). In this case, we are persuaded that the property at issue is exempt.

■ The assessor classified and taxed the improvements as the airlines' personal property but, in fact, under the terms of its lease agreement with the airlines, RIAC took title to all the leasehold improvements that the airlines installed at the time they were completed. Title to the airport and the real property on which it is situated is held by the State of Rhode Island, which will acquire title to the improvements at issue upon the termination of RIAC's thirty-five-year lease, according to § 4.2 of that lease. Although RIAC, in its *amicus* brief, contended that the state owns the improvements, we need not decide which entity owns the improvements, given our determination that both RIAC and the state are statutorily exempt from municipal taxation.

The RIAC was created in 1992 as a subsidiary of EDC. By statute, EDC and "its projects, property, and moneys * * * shall at all times be free from taxation of every kind by the state and by the municipalities and all political subdivisions of the state." Section 42–64–20(b). In accordance with the plain language of this statute, EDC is exempt from City of Warwick property taxes. As a subsidiary of EDC, RIAC has "all the powers, privileges, rights, immunities, tax exemptions, and other exemptions" of EDC. Section 42–64–7.1(b). Hence, the parties alleged that RIAC is also exempt from municipal property taxes.

During those times that the property is revenue-producing, however, the parties alleged that RIAC is required to make payments in lieu of taxes (PILOT) to approximate "the average amount of real property taxes due throughout the state with respect to facilities of a similar nature

and size," unless the parties agree to another sum. Section 42–64–20(a), § 42-64-7.1(a)(1).[2] Although the assessor believes that the amount should be greater than that provided in the statute, RIAC has made payments from parking revenues in the amount designated by statute, namely, $275,000 per year from 1993 to 1998, and $500,000 per year since 1998. *See* G.L. 1956 § 1–2–17 and P.L.1998, ch. 31, art. 34, § 1.[3] The assessor argued that because PILOT payments approximate the amount that would have been assessed for municipal property taxes, the airport property is subject to assessment. Therefore, the assessor asserted, it should not be considered absolutely exempt. We disagree.

RIAC provides compensation to the City of Warwick in the amount specifically designated in § 1–2–17. These payments are intended as "compensation for municipal services provided at T.F. Green state airport * * * provided any payments provided or any portion of these payments is not disapproved by the F.A.A." Section 1–2–17. The assessor's dissatisfaction with the amount of those disbursements does not constitute a source of authority to impose additional taxes on the property. To the contrary, in light of the exemption expressly delineated in § 42–64–20(b), it is clear that the Legislature intended that RIAC's airport property be exempt from city imposts beyond the amounts for which it may be liable under § 42–64–20(a) and those specifically delineated in G.L.1956 § 1–2–17. *Cf. Kent County Water Authority v. State Department of Health,* 723 A.2d 1132, 1134, 1134 n. 2 (R.I.1999) (noting that G.L.1956 § 39–16–13, by its plain language, exempts Kent County Water Authority from taxes or assessments in lieu of taxes "except as provided in [G.L.

1956] § 39–16–14"). Moreover, any additional payments would be subject to federal restrictions. 49 U.S.C. §§ 47107(1)(2), 47133(a). Accordingly, the improvements are exempt from taxation if they are deemed owned by RIAC.

As noted, although RIAC took title to the improvements in its lease agreement with the airlines, the state holds title to the airport property and will take title to the improvements at the termination of RIAC's lease. Even in the event the state is deemed to own the improvements at issue, it, too, is exempt from municipal taxation, in accordance with § 44–3–3(1), which exempts state-owned property "except as provided in § 44–4–4.1." Although § 44–4–4.1 provides that state-owned "real property, buildings, improvements, and tangible personal property attached to, contained in, or used in connection with the property, which is leased or rented for a term of ten (10) or more years" shall be taxed to the lessee, the statute excludes "[s]tate property leased for purposes which are necessary to the operation of an airport," § 44–4–4.1(5). Because the improvements at issue are undisputedly necessary to the operation of the T.F. Green Airport, they are exempt if they are deemed owned by the state.

**Exemption Extended to Lessees**

■ Although we have noted that state-owned property is exempt from municipal taxation even in the hands of a lessee, if it has been leased for purposes necessary to the operation of an airport, § 44–4–4.1(5), it could be argued that because the airlines are not the direct lessees of the state, their tax status is unclear. Even though the airlines contended that, given their status as lessees of exempt property, they also

---

**2.** Although G.L.1956 § 42-64-20(a) refers to the EDC rather than to RIAC, the parties do not dispute that RIAC must render PILOT.

**3.** The 1998 Reenactment of the General Laws of 1956 redesignated former § 1–2–18 as § 1–2–17. (P.L.1998, ch. 441, § 1.)

are exempt from any tax on improvements, RIAC's exemption under §§ 42–64–7.1 and 42–64–20 does not expressly extend to lessees.[4] Therefore, we address the issue arguably left open by the statutory scheme, namely, whether lessees of tax-exempt airport property are likewise exempt from municipal taxation on that property.

██ The parties cited numerous cases from other jurisdictions addressing the tax status of lessees, but the analyses contained therein rely on the specific language in the laws of the respective states. As such, they are not applicable to this case, in which we adhere to our well-established precedent that "[e]xemption from taxation is to be determined not by the policy or the laws of other states but by the constitution and laws of this state." *Woonsocket Hospital v. Quinn,* 54 R.I. 424, 428, 173 A. 550, 552 (1934).

Although this Court has not had occasion to address a lessee's tax status under the exemptions set forth in these statutes, we have held previously that tax-exempt property, by its nature, is not "ratable," "assessable," or "liable to taxation," and therefore that a lessee of tax-exempt property was not bound by the procedural requirements for ratable property under § 44–5–27. *St. Clare Home v. Donnelly,* 117 R.I. 464, 468–69, 368 A.2d 1214, 1217 (1977). Thus, we attributed the tax-exempt status of the property to the lessee, albeit for a limited purpose. In *Fleet Credit Corp.,* 726 A.2d at 456, we held that computers owned by a nonexempt corporation were not exempt by virtue of their use and possession by a tax-exempt lessee. Hence, the owner's tax status controlled the taxability of the property. Similarly, in *Roger Williams General Hospital v.*

*Littler,* 566 A.2d 948, 950 (R.I.1989), we looked to formal title to the property at issue to determine whether the property was tax-exempt, and, accordingly, we held that privately owned property leased to a tax-exempt lessee was not exempt.

Addressing fact patterns more analogous to the situation at hand, in *Woonsocket Hospital v. Lagace,* 113 R.I. 95, 99–101, 318 A.2d 472, 475–76 (1974); *Quinn,* 54 R.I. at 430, 173 A. at 552; and *Rhode Island Hospital v. City of Providence,* 693 A.2d 1040, 1041 (R.I.1997) (mem.), this Court held that hospital-owned property was exempt from municipal taxation, even while used for commercial purposes by nonexempt lessees, as long as the income derived from the subject property was devoted to hospital use, as the hospital charters required. Similarly, in *Preservation Society,* 104 R.I. at 564–65, 247 A.2d at 434, we held that property leased for commercial purposes was exempt from taxation on the basis of its ownership by a tax-exempt organization.

██ Adhering to the principles set forth in these decisions, we conclude in this case that the tax-exempt status of leased property is governed by the status of its owner. Therefore, property owned by a tax-exempt entity is exempt even when the property is in the possession of a nonexempt lessee. Accordingly, we hold that the airlines are not liable for municipal taxes from which the lessor that owns the property is exempt, regardless of whether the owner is RIAC or the state.

The airlines argued that, under § 44–4–6, tenants for a term of ten or more years are liable for taxes only when they assume such obligations in the lease. The assessor, on the other hand, argued that al-

---

**4.** Although RIAC's articles of incorporation could have limited the corporation's exemption from municipal property taxation, the articles are silent on the subject of taxation. Section 42–64–7.1(b).

though § 44–4–6 stands for the proposition that a tenant *may* assume taxes by the terms of its lease, the statute does not require that a tenant may *never* be taxed if the tenant does *not* undertake the obligation. The tax assessor referred to the common law rule that long-term lessees, as against remaindermen, are liable for property taxes to the extent the leased property is income-producing. *Koszela v. Wilcox*, 538 A.2d 150, 151 (R.I.1988) (reaffirming the holding in *Sheffield* that a remainderman rather than a tenant is liable for the taxes on unproductive land, notwithstanding § 44–4–6); *Sheffield v. Cooke*, 39 R.I. 217, 243, 98 A. 161, 170 (1916) (noting that, as between a life tenant or a tenant for years and a remainderman, the tax burden is allocated to the tenant for the duration of the tenancy, to the extent the property is income-producing; conversely, to the extent the property is *not* income-producing, it is taxable to the remainderman).

In our opinion, § 44–4–6 and the cases cited by the assessor are not instructive on the issue before us because the seventeen-year lease to the airlines did not extinguish the property's exempt status and did not produce a taxable event. The statutory and common law rules regarding the allocation of the tax burden between a life tenant and a remainderman do not constitute a source of taxing authority, and, in fact, are not relevant if the property is exempt from taxation in the first instance. Accordingly, the lessee airlines are not liable for taxes on leased property when its lessor, whether RIAC or the state, is statutorily exempt.

### Conclusion

For these reasons, we sustain the appeal and vacate the judgment of the Superior Court. Because there are no material issues of fact in dispute, we remand the case to the Superior Court with instructions to enter judgment in favor of the airlines.

Chief Justice WILLIAMS did not participate.