In re Matthew A. BROWN, in his capacity as Secretary of State of the State of Rhode Island.

No. 2006–199–Appeal.

Supreme Court of Rhode Island.

Aug. 8, 2006.

John A. MacFadyen, Providence, for the House of Representatives and Senate of Rhode Island.

Claire Richards, for Governor Donald L. Carcieri.

James P. Marusak, Providence, for Minority Leader Watson (amicus).

Joseph Avanzato, Providence, for Secretary of State Brown.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This matter came before the Supreme Court on an expedited appeal from a judgment of the Superior Court. Governor Donald L. Carcieri (Governor) and both houses of the Rhode Island General Assembly (General Assembly) appealed separate portions of the same Superior Court judgment regarding the Governor's authority to order nonbinding referendum questions to be placed on the general election ballot. Due to the time-sensitive nature of ballot preparation,[1] we granted the parties' joint motion to expedite the appeal, heard oral arguments on August 7, 2006, and now issue this opinion. We affirm in part and reverse in part the judgment of the Superior Court.

## I

### Facts and Travel

The facts pertinent to this case are as follows: On January 19, 2006, 2006–H 6874 (Act) was introduced in the House of Representatives (House), providing for the repeal of G.L.1956 § 17–5–2. Section 17–5–2 provided that "[t]he governor shall have the power to order the secretary of state to submit any question or questions that he or she shall deem necessary to the electors at any election." On April 12, 2006, the House Committee on Separation of Powers recommended passage of the Act. But meanwhile, on May 3, 2006, while the Act was pending in the House, the Governor sent a letter to Secretary of State Matthew A. Brown (Secretary), ordering two questions to be placed on the ballot for the November 2006 general election.[2]

On May 18, 2006, the Act was passed by the House. It was transmitted to the Senate and passed that body on May 25, 2006, and was then transmitted to the Governor.

---

1. According to the original petition for declaratory judgment, the Secretary of State's deadline for preparing the November 2006 ballot, the contents of which depend on the decision of this Court in the instant matter, is "on or about August 9, 2006."

2. The two questions transmitted by the Governor to the Secretary for inclusion in the November 2006 ballot, per the attachment sent by the Governor to the Secretary along with his letter, were: (1) "Should the voters have the right to vote to enact laws and to amend the Constitution directly through a process called direct voter initiative?"; and (2) "Should the Rhode Island Constitution be amended to limit the growth of state spending to the rate of inflation plus 1.5% and to limit annual increases in local property taxes to 4%?"

The Governor vetoed the Act on May 30, 2006. In turn, on June 6, 2006, the House voted to override the veto, and the Senate concurred on June 13, 2006, the date upon which the Act became effective.

The Secretary filed a petition for declaratory judgment in the Superior Court seeking a declaration of his duties and responsibilities with respect to the Governor's orders contained in the May 3, 2006, letter in light of the legislative repeal of § 17–5–2. According to the Secretary's petition for declaratory relief, the fact that the Governor had ordered the Secretary to place two questions on the ballot pursuant to § 17–5–2 on May 3, 2006 (i.e., before the effective date of the repeal) prompted the Secretary to seek a judicial declaration of whether he was obligated to execute the Governor's order, or whether the Act proscribes him from doing so.

After hearing, a justice of the Superior Court issued a bench decision, followed by a written judgment, containing the following two findings: (1) The repeal of § 17–5–2 did apply to the ballot questions transmitted by the Governor on May 3, 2006, and because of the statutory repeal of his authority to make such an order, the Secretary could not lawfully place those questions on the ballot; and (2) the Governor had an inherent constitution-based authority to place such questions on the ballot irrespective of the statute or its repeal.

## II

### Analysis

On appeal both parties address the statutory repeal issue and the separate issue (addressed by the hearing justice despite a lack of argument or briefing) of whether the Governor retains a distinct *constitutional* authority to place questions on the ballot regardless of statutory grant.

### A

### Statutory Authority

 Before this Court, the Governor contends that the hearing justice erred in finding that the repeal of § 17–5–2 applied to the ballot questions transmitted by the Governor on May 3, 2006. This Court reviews questions of statutory interpretation *de novo. State v. Martini,* 860 A.2d 689, 691 (R.I.2004). It is an equally fundamental maxim of statutory construction that statutory language should not be viewed in isolation. *See, e.g., Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 60, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004) ("Statutory construction is a 'holistic endeavor.' ") (quoting *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)); *McCarthy v. Bronson,* 500 U.S. 136, 139, 111 S.Ct. 1737, 114 L.Ed.2d 194 (1991) (stating that statutory language must be read in its proper context, not viewed in isolation); *In re Tavares,* 885 A.2d 139, 146 (R.I.2005) ("Statutory construction is a holistic enterprise[.]") (quoting *Park v. Ford Motor Co.,* 844 A.2d 687, 692 (R.I. 2004)); *Billington v. Fairmount Foundry,* 724 A.2d 1012, 1013–14 (R.I.1999) ("It is well settled that '[i]n construing the provisions of statutes that relate to the same or to similar subject matter, the court should attempt to harmonize each statute with the other so as to be consistent with their general objective scope.' ") (quoting *Kaya v. Partington,* 681 A.2d 256, 261 (R.I. 1996)). When performing our duty of statutory interpretation, this Court "consider[s] the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." *Sorenson v. Colibri Corp.,* 650 A.2d 125, 128 (R.I.1994). Therefore, we examine § 17–5–2 in light of

the broader statutory scheme concerning ballot issues—title 17 of the General Laws: Elections.[3]

▮ In reading this statute in this manner, we are in no sense retreating from our adherence to the "plain meaning" approach to statutory construction. In our view, however, the "plain meaning" approach is not the equivalent of myopic literalism. When we determine the true import of statutory language, it is entirely proper for us to look to "the sense and meaning fairly deducible from the context." *In re Estate of Roche*, 16 N.J. 579, 109 A.2d 655, 659 (N.J.1954). In the instant situation, it would indeed be a foolish and myopic literalism to focus narrowly on § 17–5–2 without regard for the broader context.

A thorough examination of chapter 5 of title 17 of the General Laws (entitled "Statewide Referenda Elections") as it stood before the repeal reveals that said chapter deals with a dynamic and continuing process; and that process quite clearly was affected by the repeal of § 17–5–2. The Secretary, whose election duties and responsibilities are outlined throughout chapter 5 of title 17, understandably sought a clarification of exactly what, if anything, he now was required to place on the ballot at the direction of the Governor.

We note at the outset that the law provides that all referendum questions shall be prepared by the Secretary and submitted to the voters in accordance with chapter 5 of title 17 of the General Laws: "Any proposition of amendment to the Constitution or any public question of statewide impact submitted to the electors of this state at a general election * * * shall be held in conformity with this chapter." Section 17–5–1. Thus, the authority of the Secretary to provide for the placement of referendum questions on the ballot is limited. In accordance with § 17–5–1.1(1), questions are submitted to the electors pursuant to an act of the General Assembly "authorizing the submission of a question to all of the electors of the state[.]"

Prior to its repeal, § 17–5–2 vested the Governor with the limited power to order the Secretary to submit questions to the electors at any election. However, we cannot weigh § 17–5–2 in isolation, but must consider it in tandem with the statutory duties of the Secretary. Indeed, the precise issue raised before this Court is the nature of the responsibilities of the Secretary pursuant to chapter 5 of title 17 after receiving the order and after learning of the repeal of the Governor's statutory authority to issue such orders. In our opinion, the Governor's contention on appeal that his rights as governor of the state are in question is not entirely accurate. The Governor's limited power to order the Secretary to place nonbinding questions on the ballot was wholly dependent upon the statutory authority of § 17–5–2. The Governor exercised that authority in its waning days on May 3, 2006;[4] however, now that the time has come for the Secretary to perform his statutorily prescribed duties, the Governor no longer has the authority to compel the Secretary to honor that previously issued order.

**3.** The parties have briefed this Court on the law respecting the repeal of a statute and the effect of such repeal on any pending case or controversy. However, we are satisfied that this case is distinguishable in important ways from the cases applying the law of retroactivity. Therefore, we find it unnecessary to address those cases.

**4.** The Governor also sent a letter to the Secretary on May 30, 2006, transmitting changes to be applied to the questions for ballot inclusion—indicating that perhaps the May 3, 2006, order was not quite as final as the Governor now contends.

■ We can clarify the Secretary's duties here as follows: The repeal of § 17–5–2 extinguished the Governor's authority well *before* the Secretary could prepare the ballot; now that the time has come to prepare the ballot, the Secretary no longer has authority to comply with the Governor's letter. We therefore affirm the hearing justice on the application of the repeal of § 17–5–2 to the questions at issue in this case.

**B**

**Constitutional/Inherent Authority**

■ The hearing justice was asked to declare the Secretary's duties and responsibilities in light of the repeal of § 17–5–2, and he did so correctly, we hold. For reasons known only to him, however, he also entered a declaration respecting what he considered to be the inherent constitutional powers of the Governor—an issue that was not before him. The record discloses that this precise issue was neither briefed nor argued; the trial justice raised it himself. Moreover, during the hearing in Superior Court, counsel for the Governor candidly stated that she was not raising that issue. On appeal, the Governor contends that the prerogative to submit nonbinding questions to the voters belongs to him, as an incident of his office, and does not have a constitutional dimension.

■ This Court has held that a party may not renounce on appeal a position that he or she assumed at trial. *See Lennon v. Dacomed Corp.*, No.2004–292–A., 901 A.2d 582, 592–93 & n. 11 (R.I. 2006); *Thomas v. Ross*, 477 A.2d 950, 953 (R.I.1984) (holding that a party who claims only one issue before the court for trial has waived all other claims for relief); *see also Long v. Arcell*, 618 F.2d 1145, 1147 & n. 2 (5th Cir.1980) (declining a party's request to be relieved on appeal of stipulations made by his or her attorney at trial). We appreci-

ate the candor of counsel for the Governor in acknowledging before the hearing justice that she had no basis in law for asserting that a governor has an inherent right to order the Secretary to place questions on the ballot. We would add that, even though the issue is not presently before us, we are not impressed by the arguments contending that a governor has such an inherent right.

■ In our opinion, the hearing justice should not have reached a perceived constitutional ground that was not raised or argued by the parties. Neither this Court nor the Superior Court should decide constitutional issues unless it is absolutely necessary to do so. *State of Rhode Island v. Lead Industries Association, Inc.*, 898 A.2d 1234, 1238 (R.I.2006) (noting "the ' "deeply rooted" commitment "not to pass on questions of constitutionality" unless adjudication of the constitutional issue is necessary' "); *see also Harmon v. Brucker*, 355 U.S. 579, 581, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958) (recognizing a "duty to avoid deciding constitutional questions presented unless essential to proper disposition of a case"). The trial justice had no authority to address an issue that was explicitly denied before him; therefore, we reverse him on this point.

**III**

**Conclusion**

For the reasons discussed above, we affirm the judgment of the Superior Court as to the statutory issue, but we reverse the judgment of the Superior Court recognizing a constitutional or inherent power of the Governor to place nonbinding referendum questions on a general election ballot. The record shall be remanded to the Superior Court.