June 5, 2026

The Providence Community Health    :
     Centers, Inc.

         v.              :

Neal Dupuis, in his capacity as Tax    :
  Assessor for the City of Warwick.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

The Providence Community Health    :
    Centers, Inc.

                v.                 :

Neal Dupuis, in his capacity as Tax    :
    Assessor for the City of Warwick.

Present: Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.** The plaintiff, The Providence Community Health Centers, Inc. (PCHC or plaintiff), appeals from a Superior Court judgment entered in favor of the defendant, Neal Dupuis, in his capacity as Tax Assessor for the City of Warwick (the tax assessor or defendant), following the grant of the defendant's motion for summary judgment. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

## Facts and Travel[1]

PCHC is a nonprofit healthcare organization operating in Providence, Rhode Island. It is the only federally qualified health center in Providence. PCHC was established in 1968 and treats patients without regard to their ability to pay for its healthcare services, including medical, dental, mental health, substance abuse, vision and enabling services. As of 2022, PCHC treated 62,489 patients, approximately 78 percent of whom were either uninsured or provided with public insurance. The vast majority of its patients qualify for Medicaid, which suggests that it predominantly serves those who are beneath or just above the federal poverty level. However, PCHC admitted that it is not always able to collect every patient's financial information and that one patient self-reported a household annual income of $350,000.

PCHC owns twenty-five properties in Providence, which allows it to provide its services to a large number of people in the community. At issue in this appeal, however, is PCHC's sole property in the City of Warwick, located at 1 Coastway Boulevard (the property), which it acquired on July 28, 2020. The property is utilized by PCHC for "Patient Case Management, Clinical Administrative Staff,

---

[1] We glean the facts primarily from the affidavits of Merrill R. Thomas, the President and Chief Executive Officer of PCHC, and Neal Dupuis, the Tax Assessor for the City of Warwick.

Medical Records, Billing, Coding, Accounting/Payroll, Human Resources and Executive Leadership." Additionally, healthcare providers within the case management division of PCHC meet with patients virtually from the property to provide those patients with healthcare services.

On March 25, 2021, the Providence City Council passed a resolution favoring the passage of legislation that would grant PCHC an exemption from property taxes. Thereafter, the General Assembly provided PCHC with a specific property tax exemption, which went into effect on June 1, 2021. *See* G.L. 1956 § 44-3-3(a)(70). The language of that exemption provides: "The following property is exempt from taxation * * * [r]eal and tangible personal property of The Providence Community Health Centers, Inc., a Rhode Island domestic nonprofit corporation, located in Providence, Rhode Island." *Id.*

On September 10, 2021, PCHC applied for a tax exemption from the tax assessor for the City of Warwick. On December 31, 2021, while that application was under consideration, the tax assessor assessed the property as being worth $5,541,500 for the tax year 2022. In January 2022, the tax assessor requested information from PCHC pertaining to how its operations benefit Warwick and for any communications it may have had with the city or its legislative representatives. PCHC responded by informing the tax assessor that it employed thirty-nine Warwick residents and that it had treated a minimum of 843 Warwick residents over the course

of 2021. Additionally, PCHC noted that it did not have any discussions about a tax exemption "with the City of Warwick," but that it had received support from a Warwick representative in considering § 44-3-3(a)(70). It further provided letters from sponsors of § 44-3-3(a)(70), stating that it was the General Assembly's intent to provide PCHC with a statewide property tax exemption. Based on "the fact that the Providence City Council and Providence [General Assembly] delegation were the only ones involved in the passage of § 44-3-3(a)(70)," the tax assessor concluded that the statute "is a Providence-specific exemption * * *." Accordingly, PCHC's request for an exemption was denied.[2]

PCHC was then liable to Warwick for $155,716.15 in taxes on the property. It appealed its tax liability to the tax assessor, arguing that the § 44-3-3(a)(70) exemption applied to the property even though the property is situated in Warwick and not Providence. That appeal was denied on November 22, 2022. PCHC next appealed from that decision to the Tax Board of Review for the City of Warwick (tax board), arguing once again that the plain language of § 44-3-3(a)(70) provided it with an exemption, and, once again, that appeal was denied on or about February 14, 2023.

---

[2] The affidavit of Merrill R. Thomas notes that this denial occurred on "June 27, 2020." However, the request for the exemption first came in September 2021 and based on the other events that occurred in the interim, the date of denial was likely June 27, 2022.

PCHC then filed an appeal from the decision of the tax board to the Superior Court, pursuant to G.L. 1956 § 44-5-26(j), on March 16, 2023. In its original petition, PCHC argued that it was exempt from paying taxes on the property due to § 44-3-3(a)(70); however, on November 24, 2023, it amended its petition to include the contention that it was alternatively exempt from paying such taxes under § 44-3-3(a)(12).[3]

After answering the amended petition, the tax assessor moved for summary judgment arguing that the court was required to construe the statutes strictly against PCHC because it was seeking an exemption. He then argued that PCHC's reading of § 44-3-3(a)(70) was incorrect because (1) the grammar and punctuation of the statute plainly supports the determination that only PCHC's Providence properties are exempted from taxation, (2) the plain language of the statute expressly exempts only PCHC's Providence properties, (3) PCHC's interpretation contains surplusage, and (4) public records surrounding the enactment of § 44-3-3(a)(70) suggest that the General Assembly intended to exempt only PCHC's Providence properties. He

---

[3] General Laws 1956 § 44-3-3(a)(12) provides a tax exemption for

> "[p]roperty, real and personal, held for, or by, an incorporated library, society, or any free public library, or any free public library society, so far as the property is held exclusively for library purposes, or for the aid or support of the aged poor, or poor friendless children, or the poor generally, or for a nonprofit hospital for the sick or disabled[.]"

further argued that PCHC failed to meet the requirements for the exemption set forth in § 44-3-3(a)(12) because (1) it is not an actor contemplated by the statute to receive an exemption, (2) the original drafters of the statute would not have considered it to be applicable to PCHC, (3) even if the statute were applicable, PCHC does not serve the poor "exclusively" as the statute requires, and, (4) if § 44-3-3(a)(12) were found to be applicable, then the specific exemption located in § 44-3-3(a)(70) would be superfluous.

PCHC responded with its own cross-motion for summary judgment. It first argued that the plain language of § 44-3-3(a)(70) unambiguously exempts its property—wherever it may be located in the state—from taxation. It next claimed that § 44-3-3(a)(12) applies to it, because the plain language of that statute does not require it to serve the poor exclusively. PCHC further contended that, even if the language of that statute were ambiguous, it could not be interpreted to require an organization to serve the poor exclusively due to the "proviso canon" and, to hold otherwise, would lead to an absurd result.

The hearing justice heard arguments on the cross-motions on June 24, 2024, and delivered a bench decision concluding that PCHC was not exempt from taxes on the property. The hearing justice first determined that there were no genuine issues of material fact and that the matter turned on the statutory interpretations of §§ 44-3-3(a)(70) and 44-3-3(a)(12). Relying on a previous decision from the

Superior Court, the hearing justice held that the language of § 44-3-3(a)(12) was ambiguous. *See PACE Organization of Rhode Island v. Frew*, No. PC-2023-01202, 2024 WL 1135970 (R.I. Super. Mar. 6, 2024). He also determined that PCHC's argument concerning the "proviso canon" was unavailing because this Court previously determined that the statute requires that a party seeking an exemption must serve the poor exclusively. *See Lifespan Corporation v. City of Providence*, 776 A.2d 1061, 1062 (R.I. 2001) (mem.) ("Section 44-3-3(12) exempts from taxation real and personal property that is held 'exclusively * * * for a hospital for the sick or disabled[.]'"). Because an ambiguous statute granting a tax exemption is to be resolved in favor of the taxing authority, *see Polseno Properties Management, LLC v. Keeble*, 288 A.3d 988, 992 (R.I. 2023), and because PCHC admitted that it does not exclusively serve the poor, the hearing justice found that § 44-3-3(a)(12) does not grant PCHC a tax exemption on the property.

The hearing justice then analyzed whether § 44-3-3(a)(70) provided PCHC with an exemption for the property tax. He determined that the subsection is not ambiguous and that its inclusion of the phrase "located in Providence, Rhode Island[]" limits PCHC's exempted property to only those properties it owns in Providence. Therefore, he concluded that, because the property is located in Warwick, § 44-3-3(a)(70) did not grant PCHC an exemption.

- 7 -

The hearing justice went on to state that, even if the statute were to be deemed ambiguous, reading the statute as a whole did not help in determining whether the exemption only applied to PCHC's Providence properties because "there is no uniformity in the language used * * *." He also determined that interpreting "located in Providence, Rhode Island[]" as merely describing the location of PCHC's headquarters would make that language surplusage—because it does not identify which property is exempt—and that interpretation would create issues in the event that PCHC changed the location of its headquarters. The hearing justice noted that his interpretation of the statute is bolstered by the fact that the statute begins with the phrase "the following property is exempt from taxation." Finally, although he recognized that grammar and punctuation should not be the sole basis of statutory construction, he agreed with the tax assessor that "the placement of the comma after the word 'corporation' supports the argument that 'located in Providence, Rhode Island' relates back to the word 'property.'"

As a result, the Superior Court granted the tax assessor's motion for summary judgment and denied PCHC's cross-motion for summary judgment. PCHC timely filed its notice of appeal on July 12, 2024.

## II

## Standard of Review

"This Court reviews *de novo* a decision of the Superior Court to grant summary judgment, applying the same rules and standards as those employed by the justice below." *Riccitelli v. Town of North Providence by and through Vallee*, 308 A.3d 977, 981-82 (R.I. 2024) (quoting *Benaski v. Weinberg*, 899 A.2d 499, 502 (R.I. 2006)). "We will affirm a trial court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Bayview Loan Servicing, LLC v. Providence Business Loan Fund, Inc.*, 200 A.3d 153, 156 (R.I. 2019) (brackets omitted) (quoting *Cancel v. City of Providence*, 187 A.3d 347, 350 (R.I. 2018)).

"[W]hen presented with questions of statutory interpretation, this Court engages in a *de novo* review." *Bayview Loan Servicing, LLC*, 200 A.3d at 156-57 (quoting *In re Tetreault*, 11 A.3d 635, 639 (R.I. 2011)).

## III

## Discussion

On appeal, PCHC argues that the hearing justice erred by misinterpreting both §§ 44-3-3(a)(70) and 44-3-3(a)(12). We will analyze each of those statutes in turn.

## Section 44-3-3(a)(70)

We begin our discussion by examining the entire text of § 44-3-3(a)(70):

> "The following property is exempt from taxation: * * * Real and tangible personal property of the Providence Community Health Centers, Inc., a Rhode Island domestic nonprofit corporation, located in Providence, Rhode Island[.]"

The parties disagree as to which antecedent "located in Providence, Rhode Island" modifies. PCHC contends that it modifies "a Rhode Island nonprofit corporation," thus, "located in Providence, Rhode Island" merely adds a description of where PCHC is primarily located. PCHC argues that this is clear from the plain language of the statute when viewed as a whole, because other sections of § 44-3-3(a) include a street address, plat or lot numbers, or map and block numbers to define specific properties that are to be exempted, which is not included in § 44-3-3(a)(70).

The tax assessor, on the other hand, contends that it modifies "[r]eal and tangible personal property of The Providence Community Health Centers, Inc." and, therefore, limits the scope of PCHC's property tax exemption to property PCHC owns in Providence. He notes that, although other sections of the statute are more specific when limiting a corporation's properties that are to be exempted, PCHC owns twenty-five properties throughout Providence and listing each one would be impractical. The tax assessor suggests that the lack of any specific property

identification, combined with the specification of Providence, is evidence that the General Assembly only intended to exempt PCHC's Providence properties.

To enhance that argument, the tax assessor points to § 44-3-3(a)(40), which provides for the following tax exemption:

> "Real and personal property located within the city of East Providence of the Trustees of Methodist Health and Welfare service a/k/a United Methodist Elder Care, a Rhode Island nonprofit corporation[.]"

Both parties agree that this section provides the Trustees of Methodist Health and Welfare service a property tax exemption limited to property it owns in East Providence, despite the fact that there is no specific property identification contained in it. PCHC argues that § 44-3-3(a)(40) differs from § 44-3-3(a)(70), because subsection (40) uses the phrase "located within" prior to naming the organization, whereas subsection (70) uses the phrase "located in" after naming PCHC. It further notes that "in" and "within" have different dictionary definitions.

"It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Berman v. Sitrin*, 991 A.2d 1038, 1043 (R.I. 2010) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). "This is particularly true where the Legislature has not defined or qualified the words used within the statute." *D'Amico v. Johnston Partners*, 866 A.2d 1222, 1224 (R.I. 2005) (quoting *Markham v. Allstate Insurance Co.*, 116 R.I.

- 11 -

152, 156, 352 A.2d 651, 654 (1976)). "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Id.* (quoting *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I. 2001)).

"It is an equally fundamental maxim of statutory construction that statutory language should not be viewed in isolation." *Rhode Island Truck Center, LLC v. Daimler Trucks North America, LLC*, 338 A.3d 1056, 1060 (R.I. 2025) (quoting *In re Brown*, 903 A.2d 147, 149 (R.I. 2006)). "When performing its duty of statutory interpretation, this Court considers the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections." *Id.* at 1060-61 (brackets omitted) (quoting *In re Brown*, 903 A.2d at 149). "If a statute is ambiguous—that is, 'susceptible of more than one construction'—the Court will 'adopt the construction that comports with constitutional imperatives.'" *Id.* at 1061 (quoting *In re Kyle S.*, 692 A.2d 329, 334 (R.I. 1997)). "It is only if the statutory language is ambiguous that we will turn to our well-established maxims of statutory construction in an effort to glean the intent of the Legislature." *Id.* (quoting *Johnson v. Johnson*, 264 A.3d 835, 838 (R.I. 2021)).

This Court is required to read the terms of the statute in their plain and ordinary meaning, and not in a hypertechnical fashion. *See In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 505 n.30 (R.I. 2011) (providing that, in

determining if an ambiguity exists in a statute, "the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner" (quoting *Lazarus v. Sherman*, 10 A.3d 456, 464 (R.I. 2011))). The terms "in" and "within" are commonly used interchangeably in everyday parlance and thesauruses have the two listed as synonyms. *See* Roget's International Thesaurus § 207.10 at 158 (5th ed. 1992). Thus, the Court draws no distinction between the terms "in" and "within" as they are employed in § 44-3-3(a).[4]

Despite those terms being indistinguishable, we must still address the fact that § 44-3-3(a)(40) utilizes the phrase "located within" prior to naming the Trustees of Methodist Health and Welfare service as the owner of the exempted property—which makes it clear that the property to be exempt is that which is physically in East Providence—whereas § 44-3-3(a)(70) provides "located in" after it names PCHC. PCHC argues this distinction shows that the phrase "located in" merely describes the location of its headquarters. Yet, this Court has held that, when interpreting a statute, it "is bound, if it be possible, to give effect to all its several

---

[4] Dictionaries also include definitions for the two terms which are virtually indistinguishable, often using one term to define the other. "In" is commonly defined as "[w]*ithin* the limits, bounds, or area of" or "[f]rom the outside to a point *within*[.]" The American Heritage Dictionary of the English Language 885 (5th ed. 2011) (emphasis added). "Within" is defined as "[i]*n* or into the inner part[.]" *Id.* at 1990 (emphasis added).

parts. No sentence, clause or word should be construed as unmeaning and surplusage, if a construction can be legitimately found which will give force to and preserve all the words of the statute." *St. Clare Home v. Donnelly*, 117 R.I. 464, 470, 368 A.2d 1214, 1217-18 (1977). If the Court were to accept PCHC's interpretation of § 44-3-3(a)(70), then the phrase "located in Providence, Rhode Island" would have no effect or force and would serve as mere background information for the reader about PCHC's principal place of business.

Had the General Assembly intended such an interpretation it could have used the phrase "headquartered in Providence, Rhode Island." *See In re Proposed Town of New Shoreham Project*, 25 A.3d at 526 ("[A]ny other interpretation by this Court would impermissibly read purposefully unwritten words into the statute's meaning and subvert the Legislature's clear intention * * *.").

Rather, interpreting "located in Providence, Rhode Island" as limiting the scope of PCHC's exemption to its Providence properties gives effect to the plain and ordinary meaning of the words of the statute, while also limiting the amount of surplusage and avoiding unwritten terms from being read therein. Further, "[t]his Court has held that our duty is to 'strictly construe statutory tax exemptions in favor of the taxing authority.'" *Polseno Properties Management*, 288 A.3d at 992 (quoting *Delta Airlines, Inc. v. Neary*, 785 A.2d 1123, 1126 (R.I. 2001)). "We have noted that 'the rule of strict construction is not to be applied so as to defeat a clear

- 14 -

legislative intent to grant a particular exemption.'" *Id.* (quoting *Preservation Society of Newport County v. Assessor of Taxes of City of Newport*, 104 R.I. 559, 565, 247 A.2d 430, 434 (1968)). "Nevertheless, 'the party claiming the tax exemption bears the burden of demonstrating that the statute reveals such an intent.'" *Id.* (quoting *Delta Airlines, Inc.*, 785 A.2d at 1126).

PCHC has not persuaded this Court that any such intent can be detected in the statute itself. While it has introduced letters from both the state senator and state representative who sponsored the bills which eventually became § 44-3-3(a)(70), letters from individual legislators do not assist this Court in discerning the intent of the entire General Assembly. *See LaPlante v. Honda North America, Inc.*, 697 A.2d 625, 628-29 (R.I. 1997) ("[P]ost hoc affidavits offered as 'recollections' of the intent of legislators are not true legislative histories and should be given no weight. They hold no place within the canons of statutory construction."). Additionally, those letters are extrinsic to the text of the statute itself, to which this Court is limited in interpreting a statute absent ambiguity. *See Berman*, 991 A.2d at 1043 ("It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.") (quoting *Accent Store Design, Inc.*, 674 A.2d at 1226).

Finally, PCHC submits that three other organizations[5] have been granted tax exemptions that are worded similarly to § 44-3-3(a)(70) and that the Superior Court's interpretation would strip those organizations of their exemptions outside of their respective locations, leading to an absurd result. However, PCHC has provided no evidence in the record showing that those organizations are receiving tax exemptions outside of their statutorily defined areas; even if they had provided such evidence, it would not be an appropriate replacement for the plain text of the statute. *See Berman*, 991 A.2d at 1043.

Thus, for the reasons provided above, we hold that § 44-3-3(a)(70) does not grant PCHC a tax exemption in the property.

### Section 44-3-3(a)(12)

Turning to the next statute at issue, the text of § 44-3-3(a)(12), in its entirety, provides:

> "The following property is exempt from taxation: * * * Property, real and personal, held for, or by, an incorporated library, society, or any free public library, or any free public library society, so far as the property is held exclusively for library purposes, or for the aid or support of the aged poor, or poor friendless children, or the poor generally, or for a nonprofit hospital for the sick or disabled[.]"

---

[5] Those three entities are Steere House in Providence (§ 44-3-3(a)(54)), Habitat for Humanity—Greater Providence in Providence (§ 44-3-3(a)(58)), and the Manissean Tribal Council in New Shoreham (§ 44-3-3(a)(77)).

In determining that § 44-3-3(a)(12) does not apply to the property, the hearing justice held: (1) that the statute is ambiguous; (2) that PCHC is not the type of entity covered by the statute; and (3) that, even if PCHC were an entity covered by the statute, it failed to serve the poor "exclusively" as required by this Court's prior precedent. *See Lifespan Corporation*, 776 A.2d at 1062. In concluding that § 44-3-3(a)(12) is ambiguous, the hearing justice relied on an earlier opinion of the Superior Court, where it was determined that the statute could reasonably be interpreted in different ways. *See Frew*, 2024 WL 1135970, at *4.

The appeal in that case, *PACE Organization of Rhode Island v. Frew*, 355 A.3d 44 (R.I. 2026), was recently argued before this Court, and, for reasons already sufficiently explained in its respective opinion, we determined that § 44-3-3(a)(12) was ambiguous as it applied to the specific factual circumstances of PACE Organization of Rhode Island's application for a tax exemption. *Frew*, 355 A.3d at 50-51. While that holding was limited, the arguments presented here by PCHC as to why the statute is unambiguous and its interpretation of it are identical—almost *verbatim*—to the arguments that were presented by PACE Organization of Rhode Island.[6] *See id.* at 47. For that reason, we extend our holding that § 44-3-3(a)(12) is

---

[6] We note that PCHC does present an additional argument not found in *PACE Organization of Rhode Island v. Frew*, 355 A.3d 44 (R.I. 2026), which addresses how any ambiguity should be resolved in the statute. PCHC argues that "even assuming *arguendo* that [§ 44-3-3(a)(12)] is ambiguous, the proviso canon both resolves that ambiguity and clarifies that the 'exclusivity' requirement cannot apply

- 17 -

ambiguous to the instant matter.[7]  "[I]f a doubt or ambiguity exist[s] in a statute granting an exemption, such doubt must be resolved in favor of taxation." *City of Providence v. Killoran*, 447 A.2d 369, 371 (R.I. 1982).  Therefore, PCHC is not entitled to a tax exemption under § 44-3-3(a)(12).

## IV

## Conclusion

For the reasons set forth herein, the judgment of the Superior Court is affirmed, and the record of this case shall be returned thereto.

Justice Long did not participate.

Justice Goldberg participated in the decision but retired prior to its publication.

---

to PCHC's use of the [p]roperty."  As noted, "if a doubt or ambiguity exist[s] in a statute granting an exemption, such doubt must be resolved in favor of taxation." *City of Providence v. Killoran*, 447 A.2d 369, 371 (R.I. 1982).  Therefore, we need not consider that argument because this Court is not tasked with resolving any such ambiguity. *See id*.

[7] Once more, we limit that finding of ambiguity only as applied to the facts of this case.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | The Providence Community Health Centers, Inc. v. Neal Dupuis, in his capacity as Tax Assessor for the City of Warwick. |
| **Case Number** | No. 2024-287-Appeal. (KC 23-192) |
| **Date Opinion Filed** | June 5, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, and Lynch Prata, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff: M. Hamza Chaudary, Esq. |
| | For Defendant: Peter F. Skwirz, Esq. |