DECISION
Before this Court for decision is the motion for summary judgment filed by plaintiff Congregation Jeshuat Israel ("the Congregation") against defendant City of Newport ("the City"). The Court has reviewed the applicable law, together with the parties' legal memoranda and oral arguments, and now issues this written decision.
 Facts and Travel
The Congregation owns Patriots Park, Tax Assessor's Plat 24, Lot 20.4 and the Touro Synagogue, Tax Assessor's Plat 24, Lot 21, both located in Newport, Rhode Island. The Touro Synagogue, built in 1763, is the oldest Jewish synagogue in the United States and is a national historic site. Because of its history, the Touro Synagogue, in addition to being a place of worship, is a tourist destination visited by individuals of various backgrounds. In 1998, the Congregation received a substantial gift from Ambassador John L. Loeb, Jr. for the purpose of acquiring two lots adjacent to Patriots Park. The Congregation subsequently purchased the two lots located at 50-52 Spring Street, Tax Assessor's Plat 24, Lot 19 ("the Gray's Typewriter parcel") and 56 Touro Street, Tax Assessor's Plat 24, Lot 20 ("the Barney House parcel"), both *Page 2 
of which are the subject of the motion for summary judgment before the Court. The Gray's Typewriter parcel and the Barney House parcel are connected to the Touro Synagogue via Patriots Park, altogether comprising the Touro Campus.
At the time the Congregation purchased the Gray's Typewriter parcel, the building on the property was used as a retail establishment on the lower floor with two residential dwelling units above. Situated on the Barney House parcel was a retail establishment with four residential dwelling units on the upper levels of the building. Accordingly, both lots were classified as taxable property by the City. The Congregation, however, intended to convert these two existing buildings into a visitors' center to provide a more intensive experience for the visitors to the Touro Synagogue. In order to accomplish this goal, the Congregation planned to demolish the building on the Gray's Typewriter parcel and replace the structure with a new building wherein permanent exhibits, restrooms, and a gift shop would be located. With respect to the Barney House structure, the Congregation sought to remove the lower, commercial level of the building restoring the building to the original colonial-era footprint. The renovated colonial-era building on the Barney House parcel would be used for archival storage and study space with an area to display traveling exhibits.
The proposed uses of both the Gray's Typewriter parcel and the Barney House parcel constitute a museum under the Codified Ordinances of the City of Newport, Rhode Island ("Ordinance").[1] The Gray's Typewriter parcel and the Barney House parcel are situated in a General Business ("GB") zone. A museum is permitted in a GB zone only by way of special permit. Additionally, based on the plans for both buildings of the visitors' center, the *Page 3 
Congregation would had to have provided a total of twenty-five (25) on-site parking spaces in order to comply with the Ordinance § 17.60(B)(4). However, because of the size and configuration of the already existing buildings on both parcels, no on-site parking was available. To proceed with the plans for the visitors' center, the Congregation sought and obtained special use permits and dimensional variances for both parcels.
In April 2005, the Congregation, in letter a sent from its attorney to the City's tax assessor, requested the City to change the tax status of both the Gray's Typewriter parcel and the Barney House parcel from taxable to tax-exempt. See Def.'s Ex. F. More specifically, the Congregation informed the tax assessor that both properties had been emptied in January 2005, and that the structure located on the Gray's Typewriter parcel, where the Visitors' Center would be constructed, was to be demolished later in the year. The letter also stated that the first floor of the Barney House parcel was being used temporarily as a gift shop until the visitors' center was completed. Moreover, the Congregation claimed that all activities to be carried out in the new visitors' center and museum, upon their completion, would constitute "religious" uses and, thus, the properties were tax-exempt under Rhode Island statutory law.
In a follow-up letter dated October 10, 2006, to the Assistant City Solicitor, the Congregation outlined its argument for asserting tax-exempt status for the two disputed parcels. See Def.'s Ex.G.
According to the Congregation, the properties were exempt under R.I. Gen. Laws § 44-3-3(8) because of the "educational nature" of the proposed uses of the buildings. The Congregation conceded that the new buildings would not be used for religious worship or instruction, but rather would be used to educate and to tell the story of the Synagogue. Thus, since the statute provides that properties used "exclusively for . . . educational purposes" are tax-exempt, it claimed that its two parcels qualified for an exemption. Despite acknowledging that *Page 4 
the visitors' center would have a gift shop, waiting area, and restrooms — uses which were not exclusively "educational" in nature — the Congregation claimed such uses were "ancillary" to the educational nature of the project and, therefore, did not prevent the center from being classified as "exclusively educational." Ultimately, the City, through a letter written by the Assistant City Solicitor, denied the Congregation's request and the instant litigation ensued.
The Congregation has filed a motion for summary judgment now before the Court along with a supporting memorandum and affidavit. Defendant has filed an objection with supporting memorandum, exhibits, and affidavit. Additionally, the parties presented oral arguments during a hearing before this Court on July 19, 2007.
 Standard of Review
As the Rhode Island Supreme Court has noted, "[s]ummary judgment is a proceeding in which the proponent must demonstrate by affidavits, depositions, pleadings and other documentary matter before the court that he or she is entitled to judgment as a matter of law and that there are no genuine issues of material fact." Palmisciano v. BurrillvilleRacing Ass'n, 603 A.2d 317, 320 (R.I. 1992) (citing Steinberg v.State, 427 A.2d 338 (R.I. 1981); Ludwig v. Kowal, 419 A.2d 297 (R.I. 1980)). Additionally, "[i]n respect to such a motion the court does not pass upon the weight or the credibility of the evidence but must consider the affidavits and other pleadings in a light most favorable to the party opposing the motion." Palmisciano, 603 A.2d at 320 (citingLennon v. MacGregor, 423 A.2d 820 (R.I. 1980)).
Overall, "`[t]he purpose of the summary judgment procedure is to identify disputed issues of fact necessitating trial, not to resolve such issues.'" Weaver v. Am. Power Conversion Corp., 863 A.2d 193, 197
(R.I. 2005) (quoting Rotelli v. Catanzaro, 686 A.2d 91, 93 (R.I. 1996)). As such, "the only task of a trial justice in ruling on a summary judgment motion is to determine *Page 5 
whether there is a genuine issue concerning any material fact."Indus. Nat'l Bank v. Peloso, 121 R.I. 305, 397 A.2d 1312, 1313 (1979) (citing Rhode Island Hosp. Trust Nat'l Bank v. Boiteau, 119 R.I. 64,376 A.2d 323 (1977)).
However, "a party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions of legal opinions." Accent Store Design,Inc. v. Marathon House, Inc., 674 A.2d 1223, 1225 (R.I. 1996) (citingManning Auto Parts, Inc. v. Souza, 591 A.2d 34, 35 (R.I. 1991)). The opposing party has "an affirmative duty to set forth specific facts showing that there is a genuine issue of material fact." Bourg v.Bristol Boat Co., Inc., 705 A.2d 969, 971 (R.I. 1998) (citing St. PaulFire Marine Ins. Co. v. Russo Bros., Inc., 641 A.2d 1297, 1299 (R.I. 1994); Super. R. Civ. P. 56(e)). "Consequently, if no issues of material fact appear and the moving party is entitled to judgment as a matter of law, the trial justice may enter an order for summary judgment."Steinberg, 427 A.2d at 340.
 Law and Analysis
The thrust of the Congregation's summary judgment motion is that no genuine issue of material fact exists with respect to the proposed use of the visitors' center; mainly, that it will be used "exclusively for educational purposes." Indeed, it has proffered an affidavit from Laura F. Pedrick, President of the Congregation, who attests that the "primary activities in the center will be lectures and exhibits on the history of Touro Synagogue . . ." and that these "educational activities will occupy all the usable space . . . except for restrooms and a small gift shop. . . ." Aff. of L. Pedrick at ¶¶ at 6 7. Accordingly, the Congregation contends the two properties are tax-exempt under R.I. Gen. Laws § 44-3-3(8) and that summary judgment should be granted in its favor. Moreover, the Congregation claims that the instant suit is not barred by its failure to *Page 6 
file an account pursuant to § 44-5-26 challenging the City's decision because it is contesting the legality of the City's classification of the disputed properties, not the rate at which the properties were assessed.
The City counters that there are substantial factual disputes which preclude summary judgment from entering in the Congregation's favor. More specifically, the City contends that the Congregation first asserted in its April 2005 letter that the properties were exempt because of the religious nature of their uses, but in the October 2006 letter stated that the project was educational in nature. Additionally, the City notes that the Congregation has not presented any evidence which indicates that it is an "incorporated public charitable institution," as defined by § 44-3-3(8). Moreover, since the Congregation has admitted that the visitors' center will contain a gift shop and storage area, among other things, the City asserts that there factual disputes relating to whether the proposed uses of the properties constitute "exclusively educational" uses. Finally, the City argues that the instant suit is barred because of the Congregation's failure to comply with the administrative procedures outlined in § 44-5-26.
As a threshold issue, the Court must determine if the Congregation's suit is barred due to its failure to comply with § 44-5-26, which provides:
 "(a) Any person aggrieved on any ground whatsoever by any assessment of taxes against him or her in any city or town, or any tenant or group of tenants, of real estate paying rent therefrom, and under obligation to pay more than one-half of the taxes thereon, may within ninety (90) days from the date the first tax payment is due, file an appeal in the local office of tax assessment; provided, if the person to whom a tax on real estate is assessed chooses to file an appeal, the appeal filed by a tenant or group of tenants will be void. For the purposes of this section, the tenant(s) has the burden of proving financial responsibility to pay more than one-half (1/2) of the taxes. The assessor has forty-five (45) days to review the appeal, render a decision and notify the taxpayer of the decision. The taxpayer, if still aggrieved, may appeal the decision of the tax assessor to the local tax board of review, or in the event that the assessor does not render a decision, the taxpayer may appeal to the local tax board of review at the expiration of the forty-five (45) day period. Appeals to the local tax board of review are to be filed not more than *Page 7 
thirty (30) days after the assessor renders a decision and notifies the taxpayer, or if the assessor does not render a decision within forty-five (45) days of the filing of the appeal, not more than ninety (90) days after the expiration of the forty-five (45) day period. The local tax board of review shall, within ninety (90) days of the filing of the appeal, hear the appeal and render a decision within thirty (30) days of the date that the hearing was held. Provided, that a city or town may request and receive an extension from the director of the Rhode Island department of administration.
 (b) Appeals to the local office of tax assessment are to be on an application. In the event of an appeal to the local tax board of review, the local office of tax assessment, upon request by the taxpayer, shall forward the application to the local tax board of review. . . ."
As the Congregation admits in its memorandum, it has not followed the appellate procedures set forth above. The City claims, therefore, that the instant suit is barred by § 44-5-27, entitled "Exclusiveness of remedy by petition." Yet, this statute states:
 "[t]he remedy provided in § 44-5-26 is exclusive if the taxpayer owned or possessed any ratable estate at all, except that, in a proper case, the taxpayer may invoke the equity jurisdiction of the superior court; provided, that the complaint is filed within three (3) months after the last day appointed for the payment, without penalty, of the tax, or the first installment of the tax, if it is payable in installments. A taxpayer alleging an illegal or void tax assessment against him or her is confined to the remedies provided by § 44-5-26, except that the taxpayer is not required to file an appeal with the local assessor." (Emphasis added.)
The thrust of the instant suit is that the two disputed properties are tax-exempt. Tax-exempt property, by definition, is not "ratable," "assessable," or "liable to taxation," and, therefore, the Congregation was not bound by the procedural requirements for ratable property under§ 44-5-27. Thus, the City's argument with respect to this issue is without merit.
Next, the Congregation argues that the two disputed properties are exempt under § 44-3-3(8). This statute exempts:
 "[b]uildings and personal estate owned by any corporation used for a school, academy, or seminary of learning, and of any incorporated public charitable institution, and the land upon which the buildings stand and immediately surrounding them to an extent not exceeding one acre, so far as they are used exclusively for educational purposes, but no property or estate whatever is *Page 8 
hereafter exempt from taxation in any case where any part of its income or profits or of the business carried on there is divided among its owners or stockholders." (Emphasis added.)
This Court is constrained to strictly construe statutory tax exemptions in favor of the taxing authority. Preservation Society of Newport Countyv. Assessor of Taxes of Newport, 104 R.I. 559, 564-65, 247 A.2d 430, 434
(1968). However, "the rule of strict construction is not to be applied so as to defeat a clear legislative intent to grant a particular exemption." Id. at 565, 247 A.2d at 434. In any event, the party claiming the tax exemption bears the burden of demonstrating that the statute reveals such an intent. Fleet Credit Corp. v. Frazier,726 A.2d 452, 454 (R.I. 1999).
As applied to the case at bar, the Congregation has presented no evidence to the Court which indicates that it plans to operate a "school, academy, or seminary of learning" on the properties at issue. Indeed, as the City notes in its memorandum, the proposed project constitutes a "museum" under the City's Codified Ordinances, a structure or use clearly not mentioned in the statute. The record also is devoid of any evidence which suggests that the Congregation is an "incorporated public charitable institution."
Furthermore, as the statute states, the buildings and properties must be used "exclusively for educational purposes." However, the affidavit from Laura F. Pedrick, President of the Congregation, states that the "primary activities in the center will be lectures and exhibits on the history of Touro Synagogue . . ." and that these "educational activities will occupy all the usable space . . . except for restrooms and a small gift shop. . . ." In Sisterhood of Holy Nativity v. Tax Assessors,73 R.I. 445, 57 A.2d 184 (1948), the petitioner claimed that a building owned by it was "primarily" used for religious purposes. It also conceded that the building was used occasionally for non-religious activities, but those activities were merely incidental or secondary *Page 9 
to the religious use. The petitioner, however, still claimed its building was exempt under the applicable statute, which provided such relief to "buildings and land are occupied and used exclusively for religious or educational purposes . . .[,]" because when determining whether the property was entitled to exemption from taxation, its primary use prevailed over a mere secondary use. The Supreme Court rejected this argument and held:
 "[i]n view of the established policy of this court to construe tax exemption statutes strictly in favor of the taxing authority, . . . we do not feel at liberty to adopt a more liberal view in favor of the petitioner here merely because it may be said that the primary use of its building is religious. We adhere to the view that such use must be exclusively religious to entitle petitioner to the exemption which it claims."
Id. at 447-48, 57 A.2d at 185 (citations omitted).
In the instant case, the Congregation's own affidavit states that the "primary" activities in the center will be educational in nature. Although Laura F. Pedrick also notes that no "weddings, bar mitzvahs, worship services or other religious ceremonies or activities will take place in the visitors' center," see Aff. of L. Pedrick at ¶ 8, it still remains unclear whether the Congregation intends to use the visitors' center for any other non-educational activities. Thus, summary judgment is improper at this time.
 Conclusion
The Congregation's motion for summary judgment is denied.
[1] "`Museum' means . . . a building serving as a repository for natural, scientific, historical, or literary collections or objects of interest, or works of art, and arranged, intended and designed to be used by members of the public for viewing, with or without an admission charge, and which may include as an accessory use the sale of goods to the public as gifts or for their own use." Codified Ordinances of the City of Newport, Rhode Island § 17.08.010. *Page 1