**In re Jeramie N.**

**No. 96–144–M.P.**

Supreme Court of Rhode Island.

Feb. 6, 1997.

Kathleen Wyllie, John C. Revens, Jr., Warwick, for Plaintiff.

John D. Lynch, Warwick, Paul V. Jabour, Providence, for Defendant.

## OPINION

LEDERBERG, Justice.

The constitutionality of Rhode Island's adoption statute and the jurisdiction of the Family Court are at issue in this case in which out-of-state residents have petitioned the Family Court to adopt a child from Rhode Island. Five questions of law have been certified to us by the Family Court pursuant to G.L.1956 §§ 8–10–43 and 9–24–27 and Rule 72 of the Family Court Rules of Procedure for Domestic Relations. For the reasons stated below, we hold that the Family Court has jurisdiction to decide adoption petitions in the instant case. Further, we conclude that no rational basis exists for applying the residency requirement of this state's adoption statute to preclude the petitioners in the instant case from presenting their adoption petition to that court.

## Facts and Procedural History

Jeramie N. was born on January 10, 1992, and less than one month later, on February 8, 1992, his father was killed in an automobile accident. On March 29, 1995, Jeramie's mother, brother, sister, and maternal grandfather were killed in an automobile accident in Florida. Jeramie was injured in the accident but survived, and the determination of his future placement is at the center of this case.

Jeramie's mother's last place of residence was East Providence, Rhode Island, and following her death, the East Providence Probate Court appointed Elissa Schleifer, a nonrelative, as temporary guardian of Jeramie. The Probate Court also determined that physical custody of Jeramie would be with his mother's twin sister, Denise Rumrill (Rumrill), a resident of Maine; Jeramie's paternal grandparents, Benjamin and Marie Nadrowski (Nadrowskis or respondents), of Warwick, Rhode Island, were granted overnight weekend visitation with Jeramie. The child has resided with the Rumrills since May 1995, and at this time spends every other weekend with the Nadrowskis in Rhode Island.

On June 6, 1995, the Nadrowskis filed a Family Court petition to adopt Jeramie. On July 27, 1995, Rumrill and her husband, Theodore (Rumrills or petitioners), also filed a petition in the Family Court, seeking to adopt Jeramie. On March 13, 1996, a Family Court order was entered certifying the following questions to this Court:

1. "Does the Family Court have jurisdiction to hear an adoption petition once the Probate Court has appointed a temporary guardian for the child, under the Rhode Island Supreme Court's ruling in *In re Kimberly and James*, 583 A.2d 877 (R.I. 1990)?"

2. "Does Rhode Island's adoption statute, specifically, Rhode Island General Laws § 15–7–4, violate the United States Constitution, specifically, the Equal Protection Clause of the Fourteenth Amendment, by precluding an out-of-state resident from petitioning for a private adoption in the State of Rhode Island, while allowing an out-of-state resident to petition for a public adoption in the State of Rhode Island?" [1]

3. "Does Rhode Island's adoption statute, specifically, Rhode Island General Laws § 15–7–4, violate the United States Constitution, specifically, the Substantive Due Process Clause of the Fourteenth Amendment, by precluding an out-of-state resident from petitioning for a private adoption in the State of Rhode Island, while allowing an out-of-state resident to petition for a public adoption in the State of Rhode Island?"

4. "Does Rhode Island's adoption statute, specifically, Rhode Island General Laws § 15–7–4, violate the Rhode Island Constitution, specifically, the Equal Protection Clause of Article 1, § 2, by precluding an out-of-state resident from petitioning for a private adoption in the State of Rhode Island, while allowing an out-of-state resident to petition for a public adoption in the State of Rhode Island?"

5. "Does Rhode Island's adoption statute, specifically, Rhode Island General Laws § 15–7–4, violate the Rhode Island Constitution, specifically, the Substantive Due Process Clause of Article 1, § 2, by precluding an out-of-state resident from petitioning for a private adoption in the State of Rhode Island, while allowing an out-of-

state resident to petition for a public adoption in the State of Rhode Island?"

### Family Court Jurisdiction

█ The first certified question addresses the jurisdiction of the Family Court to decide an adoption petition subsequent to the appointment of a temporary guardian for the child by a Probate Court. The petitioners have maintained that because the East Providence Probate Court appointed a temporary guardian, the Family Court lacks jurisdiction to hear an adoption petition until the Probate Court divests its jurisdiction by discharging the guardian. In support of its contention, petitioners have relied on this Court's holdings in *In re Kimberly and James*, 583 A.2d 877 (R.I.1990), and *Petition of Loudin*, 101 R.I. 35, 219 A.2d 915 (1966). Under the dictates of both *Kimberly and James* and *Loudin*, the jurisdiction of the Family Court to award *custody* of an orphaned minor cannot be invoked if a guardian has been appointed by the Probate Court. The case before us, however, involves an *adoption* proceeding rather than a custody proceeding, and pursuant to G.L.1956 § 14–1–5(2), the Family Court retains exclusive jurisdiction over adoption proceedings.[2]

An important goal of adoption is that of promoting the welfare of a child by establishing a permanent and secure relationship between that child and his or her adoptive parents. 1 Joan H. Hollinger et al., *Adoption Law and Practice*, § 1.01[1] at 1–6 and § 1.01[2] at 1–14 (1992). In this case, a timely decision is imperative because Jeramie's school placement for the upcoming year is being held in abeyance. We are of the opinion that the appointment of a temporary guardian does not *ipso facto* impede adoption proceedings, thereby delaying permanency and stability in a child's life. Therefore, we hold that the Family Court retains the jurisdiction to entertain an adop-

---

1. In a private adoption, also referred to as a direct or private placement, a child may be adopted without any intervention by a state or state licensed adoption agency. 2 Am.Jur.2d *Adoption* § 6 (1994). In a public adoption, also referred to as an agency placement, a relinquishing parent surrenders all rights to the child to a state or state-licensed placement agency, which

then finds and investigates the prospective adoptive parents. *Id.*

2. Pursuant to G.L.1956 § 8–9–9, the Probate Court has jurisdiction of persons aged eighteen years or older.

tion petition notwithstanding an ongoing guardianship. Consequently, we answer the first certified question in the affirmative.

### G.L. 1956 § 15–7–4 and Equal Protection

■ Questions 2 and 4 ask whether Rhode Island's adoption statute, G.L.1956 § 15–7–4, is unconstitutional under the equal-protection clauses of both the United States and the Rhode Island Constitutions because subsection (c) of the statute allows an out-of-state resident to adopt a child "in the care and custody of a governmental child placing agency, or licensed Rhode Island child placing agency," but by implication bars the non-resident from petitioning the Family Court for a private adoption. Because this Court has held that state and federal guarantees of equal protection are coextensive, we shall combine questions 2 and 4 and apply a single analysis to these questions. *State v. Lopes,* 660 A.2d 707, 709 (R.I.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 934, 133 L.Ed.2d 861 (1996); *Kleczek v. Rhode Island Interscholastic League, Inc.,* 612 A.2d 734, 740–41 (R.I.1992).

Section 15–7–4 provides in pertinent part:
"(a) Any person residing in Rhode Island may petition the family court for leave to adopt as his or her child any person younger than him or herself and under eighteen (18) years of age, and, if desired, for a change of the child's name, but the prayer of the petition by a person having a husband or wife shall not be granted unless the husband or wife joins therein; provided, however, that upon good cause shown and a showing that the granting of the petition for adoption would be in the best interests of the minor child, the prayer of the petition may be granted although the spouse of the petitioner is not a party to the petition.
" * * *

"(c) Any person not a resident of Rhode Island may petition the family court for leave to adopt as his or her child any person younger than him or herself and under eighteen (18) years of age, and, if desired, for a change of the child's name, if the child is at the time of the filing of the petition in the care and custody of a gov-
ernmental child placing agency, or licensed Rhode Island child placing agency, but the prayer of the petition by a person having a husband or wife shall not be granted unless the husband or wife joins therein."

The Rumrills have contended that § 15–7–4 violates the equal-protection clauses of both the Fourteenth Amendment to the United States Constitution and article 1, section 2, of the Rhode Island Constitution because it precludes out-of-state residents from petitioning for a private adoption, but allows such individuals to petition for adoption of a child who is in the custody of a licensed or governmental child-placement agency. The Nadrowskis, in turn, have asserted that residency requirements were imposed on private adoptions "with the intention of preventing Rhode Island from becoming a 'baby market'" by restricting the pool of potential adoptive parents to Rhode Island residents, thereby limiting the opportunity of birth parents to sell their child to the highest bidder. Such a purpose provided a rational basis for the enactment of § 15–7–4 and thus, according to respondents, the statute does not violate the equal protection of the law simply because in-state and out-of-state residents are subjected to different treatments in respect to private adoptions.

We first note that statutory requirements for residency or domicile of the parties in adoption matters vary considerably from state to state. M.J. Greene, Annotation, *Requirements as to Residence or Domicil of Adoptee or Adoptive Parent for Purposes of Adoption,* 33 A.L.R.3d 176 § 2 at 180 (1970). "Adoption statutes often provide that the petitioner for adoption must be a resident of the state in which the proceeding takes place." 2 Am.Jur.2d *Adoption* § 122 at 1029 (1994). Some statutes require that either the adoptive parent or the adoptee reside within the jurisdiction, whereas others require that only the adoptee reside within the jurisdiction of the court. *Id.* Rhode Island's adoption statute imposes residency requirements on petitioners for private adoption, but permits residents and nonresidents to petition the Family Court for adoption if the child is in the custody of a governmental or state-licensed child-placement agency. Section

15–7–4. The second and fourth certified questions direct our attention to the constitutionality of the statute's differentiation of residents and nonresidents.

 This Court has held that not all legislative classifications are impermissible. *Dowd v. Rayner*, 655 A.2d 679, 681 (R.I. 1995); *Kennedy v. State*, 654 A.2d 708, 712 (R.I.1995). In order to determine if the classification established by a statute survives equal-protection analysis, the nature of the classification and the individual rights that may be violated must be examined. *Dowd*, 655 A.2d at 681. We begin our analysis by observing that adoption is not a fundamental right, but is rather a creature of statute. *Lindley for Lindley v. Sullivan*, 889 F.2d 124, 130–31 (7th Cir.1989). *See also* 2 Am. Jur.2d *Adoption* § 7 (1994). Therefore, because the statute before us involves neither a fundamental right, nor a suspect classification, nor a gender-based classification, "the proper standard of review of the act is minimal scrutiny, a standard that requires the act under review to be 'rationally related to a legitimate state interest.'" *Kennedy v. State*, 654 A.2d at 712 (quoting *New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511, 517 (1976) (per curiam)).

The direct private placement of children without a state or state-licensed agency's acting as an intermediary between natural and adoptive parents has become the most controversial of adoption practices. David F. Tegeler, Comment, *Advertising for Adoption Placement: Gray Market Activities in a Gray Area of Constitutional Protection*, 25 Duq. L.Rev. 129, 132 (1986). Nonagency adoption, also referred to as "gray market" adoption, carries with it the inherent danger that children will become commodities awarded to the highest bidder. *See* 2 Am. Jur.2d, *Adoption* § 6; Uniform Adoption Act (1994) § 2–102, 9 U.L.A. 12 (1996 Supp.). Although all but three states permit the direct private placement of children with unre-

lated prospective parents [3], a variety of regulations in those states governs the private placement of children for adoption. 1 Hollinger at § 1.05[3][b]; 25 Duq. L.Rev at 132.

For instance, "a small but increasing number of states now require that prior to the physical transfer of the child to an unrelated person, notice of the intended placement must be given to a designated state agency, or to a court, and a pre-placement home study of the prospective adopters must be approved." 1 Hollinger, § 1.05[3][b] at 1–67. *See e.g.*, Fla. Stat. Ann. § 63.092 (West 1995); Iowa Code Ann. § 600.8 (West 1996); Ky. Rev.Stat. Ann. § 199.473 (Michie 1995). *See also* Comment to § 2–102 of the Uniform Adoption Act.

In Rhode Island, G.L.1956 § 15–7–2 addresses the private placement of children for adoption. The Department of Children, Youth, and Families must be notified and must investigate the conditions after placement has occurred. In addition, the Family Court must decide whether the placement by a parent or parents "with a person or persons, other than a father, brother, sister, aunt, uncle, grandparent, or stepparent of the child for adoption purposes" is in the best interests of the child, the well-settled standard applied in juvenile matters. *Id.*

In response to concerns about gray-market adoptions, some states prohibit unlicensed intermediaries from engaging in child-placing activities. 1 Hollinger, § 1.05[3][b] at 1–66. *See, e.g.*, N.Y. Soc. Serv. Law §§ 374 and 374–a (McKinney 1992). In Rhode Island, G.L.1956 § 42–72.1–4(3) prohibits nongovernmental, unlicensed intermediaries, other than a parent, from engaging in placement activities for adoption purposes, except where the "child is placed with a father, sister, brother, aunt, uncle, grandparent, or stepparent of the child."

Restrictions that ensure the integrity of private placements have also included residency requirements for private placements.

---

**3.** As of 1994 only Connecticut, Massachusetts, and Delaware barred private placements and permitted only agency placements. Comment to § 2–102 of the Uniform Adoption Act (1994) 9 U.L.A. 12–13 (1996 Supp.). All states permit direct, non-agency placements of children when

a stepparent adoption is contemplated, and all states permit parents to place a child directly for adoption with close relatives other than stepparents. 1 Joan H. Hollinger et al., *Adoption Law and Practice*, § 1.05[3][b] at 1–65–1–66 (1992).

*See, e.g., In re Adoption of Murphy,* 53 Ohio App.3d 14, 557 N.E.2d 827, 830–32 (1988) (court held that mother's mere presence in county did not meet statutory requirement (R.C. § 5103.16) that she reside in county in order that the court acquire jurisdiction over private placement of her child for adoption; mother was "forum shopping").

Restrictions on private placements have attempted to ensure that the best-interests standard is satisfied and that children are not " 'sold to the highest bidder and shuffled around like objects on an auction block.' " *In re Adoption of Murphy,* 557 N.E.2d at 832. Because private placements can raise concerns that may not be implicated in agency placements, we are not prepared at this time to hold that there is no rational basis for the imposition of residency requirements in private adoptions but not in public adoptions. We are of the opinion, however, that baby-market issues are not implicated in the instant case and that Jeramie's best interests would be served by permitting the Rumrills to have their petition heard by the Family Court.

Therefore, we are led to conclude that there is no rational basis for applying § 15–7–4 to preclude the out-of-state petitioners in this case from petitioning the Family Court for consideration as adoptive parents. In reaching this decision, we note that the restrictions imposed on private placements by § 15–7–2 and § 42–72.1–4 do not bar the private placement of a child with a close relative. *See ante.*

We note that the record before us is devoid of input or testimony from the governmental and licensed adoption agencies that presumably assisted in setting forth the rational basis for the adoption statute in question, agencies that should be allowed to offer arguments in respect to the statute's constitutionality. Because this case does not enable us fully to consider the public-policy implications and the rationale underlying the enactment of the statute, we decline at this time to hold that the statute would not survive minimal-scrutiny analysis. Consequently, we refrain from concluding that § 15–7–4 fails to survive equal-protection scrutiny. Because we permit the Rumrills' petition to be heard, we decline to reach the substantive due-process claims presented in questions 3 and 5.

In summary, therefore, we answer the certified questions as follows:

To question 1: The Family Court retains jurisdiction to hear an adoption petition notwithstanding the appointment of a temporary guardian by the Probate Court.

To questions 2 and 4: We hold that the best interests of the child Jeramie N. will be served by permitting the Family Court to hear and consider the petition for adoption by his deceased's mother's twin sister and her husband, who are non-Rhode Island residents. We decline on the basis of the record before us to apply our holding to other cases at this time. Our holding is limited to the statute as applied in this case.

To questions 3 and 5: Because we have afforded relief to the petitioners, we need not address their substantive due-process arguments.

The record in this case may be remanded to the Family Court for proceedings consistent with this opinion.