# United States Court of Appeals
## For the First Circuit

No. 23-1929

NORENE RODRÍGUEZ and IRIS AIDA RODRÍGUEZ RODRÍGUEZ,

Plaintiffs, Appellants,

v.

ENCOMPASS HEALTH REHABILITATION HOSPITAL OF SAN JUAN, INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Camille L. Vélez-Rivé, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Aframe, Circuit Judges.

David Efron and Law Offices David Efron, PC on brief for appellants.
Salvador J. Antonetti-Stutts and O'Neill & Borges LLC on brief for appellee Encompass Health.
Jorge J. López López, López & Nevares, LLP, and Eugene F. Hestres Vélez on brief for appellee Báez.

January 23, 2025

**SELYA**, **Circuit Judge**. This appeal runs aground on the bedrock principle that a party opposing summary judgment must adduce specific evidence sufficient to create a genuine issue of material fact. See, e.g., Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56-59 (1st Cir. 2011); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4-5, 7-10 (1st Cir. 2010). The plaintiffs — Norene Rodríguez and Iris Aida Rodríguez Rodríguez, sisters who are appellants here — challenge the district court's entry of summary judgment in favor of defendants-appellees Encompass Health Rehabilitation Hospital of San Juan, Inc. (Encompass) and Dr. José Báez Córdova (Dr. Báez). The plaintiffs had sued the defendants for medical malpractice in connection with the treatment of their now-deceased mother, Gloria Rodríguez González. They alleged that the defendants were negligent in caring for their mother as she struggled to recover from a severe bout of the COVID-19 virus. The district court rejected the plaintiffs' claims, concluding that they had not demonstrated any genuine issue of material fact and that the defendants were entitled to judgment as a matter of law. See Rodríguez v. Encompass Health Rehab. Hosp. of San Juan, Inc., No. 21-1609, 2023 WL 6976566, at *7-8 (D.P.R. Oct. 23, 2023). After careful consideration, we affirm.

Consistent with the summary judgment standard, see Torres Vargas v. Santiago Cummings, 149 F.3d 29, 30 (1st Cir. 1998), we rehearse the relevant facts in the light most agreeable to the plaintiffs. In the process, we exclude facts that the district court appropriately excluded pursuant to its local "anti-ferret" rule.[1] See D.P.R. Civ. R. 56(e); see also Rodríguez-Severino v. UTC Aerospace Sys., 52 F.4th 448, 453 (1st Cir. 2022).

**A**

The decedent was admitted to Encompass on October 6, 2020 for physical rehabilitation after contracting COVID-19. Dr. Báez was her attending physician.

The decedent's course of treatment was carried out under Dr. Báez's supervision. Dr. Báez was not an employee of Encompass but, rather, was at all relevant times an Assistant Professor at the University of Puerto Rico's School of Medicine (UPR). He was credentialled as a specialist in the field of physical medicine and rehabilitation and had admitting privileges at Encompass.

Encompass is not a facility owned or operated by UPR. Instead, it is an independent hospital, privately owned and

---

[1] The rule authorizes the district court to disregard proposed statements of fact that are not supported by specific citations to record material. It is intended "to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Cap. Mkt. Inv., LLC v. González-Toro, 520 F.3d 58, 62 (1st Cir. 2008).

operated. Nevertheless, Encompass did host certain of UPR's residency programs. Those programs were governed by an institutional affiliation agreement for educational experience of residents (the Affiliation Agreement) entered into between Encompass and UPR. Under the terms of the Affiliation Agreement, Encompass retained "sole authority and control over all aspects of patient care." Even so, the Affiliation Agreement made Dr. Báez and a handful of other UPR faculty members responsible for the education and supervision of medical residents during each resident's year-long rotation at Encompass. For its part, UPR assumed responsibility for residents' salaries and benefits. And the Affiliation Agreement provided with conspicuous clarity that "[a]t no time shall residents or personnel of [UPR] be considered or represent themselves as agents, either express or apparent, officers, servants, or employees of Encompass."

Three UPR medical residents — Dr. Rosado Torres, Dr. Serrano Ortiz, and Dr. Jiménez García — furnished care to the decedent during her hospital stay. The residents were supervised by Dr. Báez, who co-signed the residents' medical notes and orders in his twin capacity as attending physician and supervising faculty member.

On the first day of the decedent's hospitalization, one of the residents ordered an internal medicine consultation by another physician (Dr. Bellaflores). Dr. Bellaflores — who was

- 4 -

never named as a party in this case — examined the decedent on October 7 and 8 and wrote two progress notes describing her condition. The record provides no enlightenment as to the capacity in which Dr. Bellaflores performed these services.[2]

On October 10, the decedent developed acute respiratory failure. She was then transferred to another hospital. She died on October 21. The cause of death was recorded as ventilator-acquired pneumonia.

**B**

Invoking diversity jurisdiction,[3] see 28 U.S.C. § 1332(a), the plaintiffs sued. In their complaint, they alleged that Encompass and its physicians — including Dr. Báez and Dr. Bellaflores — breached their duty to provide adequate medical care to the decedent over the course of her hospitalization. The defendants denied liability and asserted, inter alia, an immunity defense.

A period of pretrial discovery ensued. As evidence of the alleged malpractice, the plaintiffs offered an expert report

---

[2] We note that the plaintiffs claim that another physician, Dr. González Méndez, participated in the decedent's care. As we discuss later, see infra Part III, the district court appropriately disregarded the purported involvement of Dr. González Méndez.

[3] The plaintiffs are citizens of Florida. Encompass is a Delaware corporation having its principal place of business in Alabama. All other known defendants (including Dr. Báez) are citizens of Puerto Rico. And the amount in controversy exceeds $75,000.

authored by Dr. David Ross.[4]  In Dr. Ross's view, Encompass abridged applicable standards of care in three ways, all of which involved failing to give the decedent prophylactic medication for deep vein thrombosis on a timely basis.  These shortcomings, the plaintiffs' expert concluded, caused the decedent to develop an acute pulmonary embolism.  In turn, this embolism increased the risk of acute respiratory failure and resulted in the decedent's demise eleven days later.

Inasmuch as this suit was brought in diversity jurisdiction, Puerto Rico law supplies the substantive rules of decision.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Borges, 605 F.3d at 6; see also Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991) (holding that "a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement" as to what law controls).  Following the close of discovery, Dr. Báez and Encompass each moved for summary judgment.  As relevant here, Dr. Báez contended that he was immune from suit under Puerto Rico law, see P.R. Laws Ann. tit. 26, § 4105 (granting immunity to certain healthcare workers employed by the Commonwealth of Puerto Rico with respect to medical malpractice actions), and Encompass

---

[4] Dr. Ross is Executive Director of the U.S. Department of Veterans Affairs' National HIV, Hepatitis, and Related Conditions Programs.  He is also an Associate Clinical Professor at George Washington University School of Medicine.

contended that it shared Dr. Báez's immunity.  The plaintiffs opposed both motions.

On October 23, 2023, the district court granted summary judgment in favor of both Dr. Báez and Encompass.  See Rodríguez, 2023 WL 6976566, at *7-8.  The court concluded that Dr. Báez was immune from suit under Puerto Rico law.  See id. at *7; see also P.R. Laws Ann. tit. 26, § 4105.  It then held that thanks to Dr. Báez's immunity, Encompass could not be held vicariously liable for his acts or omissions.  See Rodríguez, 2023 WL 6976566, at *8. Finally, the district court "deem[ed] Plaintiffs' remaining claims waived" for lack of development.  Id.  This timely appeal followed.

**II**

Our review of the entry of summary judgment is plenary. See Torres Vargas, 149 F.3d at 31.  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if a rational factfinder could resolve it in favor of either party, and a fact is "material" if it has the capacity to change the outcome of the suit.  See Borges, 605 F.3d at 4-5.  Once the movant makes a preliminary showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to demonstrate, through factually specific proffers, that a trialworthy issue remains.

See Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997); Nieves v. Univ. of P.R., 7 F.3d 270, 279 (1st Cir. 1993).

The summary judgment standard "operates in conjunction with a district court's local anti-ferret rule." P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010). The anti-ferret rule of the District Court of the District of Puerto Rico requires that the facts presented by the parties at summary judgment be anchored in specific citations to record evidence. See D.P.R. Civ. R. 56(e) ("An assertion of fact . . . shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion."). The district court may "disregard any statement of fact not supported by a specific citation to record material." Id. "This type of rule is aimed at enabling a district court to adjudicate a summary judgment motion without endless rummaging through a plethoric record." P.R. Am. Ins. Co., 603 F.3d at 131.

We review the district court's application of a local anti-ferret rule for abuse of discretion. See id. at 130. Moreover, we conduct this review mindful of our obligation to apply "a special degree of deference . . . to [the] court's interpretation of its own local rules." Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004) (quoting In re Jarvis, 53 F.3d 416, 422 (1st Cir. 1995)).

III

In the case at hand, we start by examining the district court's treatment of the parties' factual proffers. The district court disregarded a number of facts proposed by the plaintiffs in opposition to summary judgment. It concluded that some of the proposed facts were not material and that others tripped over the anti-ferret rule because they were not adequately supported by citations to specific portions of the record. See Rodríguez, 2023 WL 6976566, at *2 n.1 (citing D.P.R. Civ. R. 56(e)). On appeal, the plaintiffs challenge the district court's disregard of certain facts.

The plaintiffs first lament the district court's refusal to acknowledge that Dr. Báez was the decedent's attending physician. In the court below, they supported this claim of error with only a general citation to the decedent's 589-page medical record. Although such a broad citation often can be said to violate the anti-ferret rule, this case differs from the mine-run: here, a banner at the top of virtually every page of the Encompass hospital record proclaims that Dr. Báez was the attending physician. It was, therefore, reasonable for the plaintiffs to have cited to the entire record in support of their claim that Dr. Báez was the decedent's attending physician. Cf. Layme v. Matias, 218 F. Supp. 2d 98, 101 (D.P.R. 2002) (reasoning that "statement of facts did not frustrate the purpose of the anti-ferret rule

inasmuch as the Court did not have to search through the record to pinpoint those facts that supported [the] arguments"). Providing a general citation to a lengthy document does not violate the anti-ferret rule when the relevant information appears prominently on the vast majority of its pages. For purposes of our review, therefore, we assume the veracity of the disputed fact: that Dr. Báez was the decedent's attending physician during her hospital stay.

In a similar vein, the district court improperly relied on the anti-ferret rule to disregard two facts derived from absences in the medical record: that the medical record did not identify any doctor besides Dr. Báez as an attending physician and that the medical record did not mention UPR. The plaintiffs purported to support both of these proposed facts with general citations to the entire 589-page medical record. Although the anti-ferret rule typically requires that facts be supported with precise citations, there is no more precise way to cite to the absence of information in a given source: the only way to show that information does not appear anywhere in the medical record is to look at the entire medical record. In the circumstances of this case, then, we think that the district court could not rely on the anti-ferret rule to disregard these two facts. In the end, however, these facts do little to advance the plaintiffs' cause,

and the district court could have properly disregarded them as immaterial.

We add, moreover, that the district court should not have disregarded facts supported by specific, paginated citations to relevant record evidence. Specifically, the plaintiffs proffered the fact that Dr. Bellaflores participated in the decedent's care. In support, they cited particular pages of the medical record containing an order requesting a consultation from Dr. Bellaflores and two medical notes signed by Dr. Bellaflores. These paginated citations provide adequate support for the fact that Dr. Bellaflores rendered at least some care to the decedent. Consequently, we consider his involvement in our review.[5]

The record tells a different tale with respect to Dr. González Méndez. The district court properly disregarded the plaintiffs' proposed fact that Dr. González Méndez participated in the decedent's care. See supra note 2. This proposed fact was supported only by a general citation to the compendious medical record in which potential support for the fact was buried.[6]

---

[5] To be sure, the district court may have disregarded the involvement of Dr. Bellaflores as immaterial. But even if that is so, the plaintiffs explained why the involvement of other doctors was relevant to their theory of the case. See infra Part IV.

[6] Here, too, the district court did not specify whether it disregarded the proposed fact because it violated the anti-ferret rule or because it was immaterial. But throughout its opinion, the court took umbrage with the plaintiffs' general citations to the 589-page medical record, and we uphold its disregarding of

Disregarding this evidence is a paradigmatic example of the appropriate operation of an anti-ferret rule. See, e.g., Rodríguez-Severino, 52 F.4th at 459 (affirming district court's disregard of facts when party "failed to point to the relevant page and line" of supporting source).

We also uphold the district court's determination that some of the plaintiffs' proposed facts were immaterial. The plaintiffs argue that all of the proposed facts were offered to show Encompass's vicarious liability for the actions of its personnel. But the plaintiffs do not explain how the proposed facts contribute to that showing — and the relationship is not apparent. Without some connective tissue, we deem any argument based on these proposed facts to have been waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

To complete the picture, we agree with the district court that some of the plaintiffs' proposed facts were not supported by record evidence. See Rodríguez, 2023 WL 6976566, at *5 n.2. For example, the plaintiffs claim that Dr. Báez was not paid by UPR. This claim is woven out of whole cloth: there is simply no record support for such a conclusion. In arguing to the contrary, the plaintiffs point only to evidence concerning UPR residents'

---

this fact on that basis. See Rodríguez-Severino, 52 F.4th at 458-59.

- 12 -

salaries.  That evidence offers no competent proof as to Dr. Báez's compensation arrangements.

Finally, the plaintiffs complain that the district court did not hold an evidentiary hearing "to determine the reliability and admissibility of the exhibits submitted with Defendants' motions."  But evidentiary hearings in connection with motions for summary judgment are rare, see 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2723 (4th ed. 2024), and in this instance, the plaintiffs left the matter to the district court's discretion.[7]  We review the district court's decision to deny an evidentiary hearing in connection with a pretrial motion for abuse of discretion.  See Price v. Gen. Motors Corp., 931 F.2d 162, 166 n.4 (1st Cir. 1991).  Here, the district court determined that an evidentiary hearing was not necessary because the plaintiffs had not "demonstrate[d] that [the challenged] documents would somehow be inadmissible at trial." Rodríguez, 2023 WL 6976566, at *6 & n.3.  And the plaintiffs still have not articulated why any of the defendants' exhibits would be inadmissible at trial.  Seen in this light, it was well within the district court's discretion to deny an evidentiary hearing.  See Price, 931 F.2d at 166 n.4 (finding no abuse of discretion in

_____

[7] To be specific, the plaintiffs requested that the district court hold an evidentiary hearing only "[s]hould th[e c]ourt deem it necessary."

denial of evidentiary hearing when "appellants have not indicated with any particularity what might have been presented at an evidentiary hearing which could have enabled them to resist summary judgment").

## IV

This brings us to the entry of summary judgment in favor of Dr. Báez. The district court reasoned that — as a matter of undisputed fact — Dr. Báez fell within the ambit of the Puerto Rico statute that grants immunity to certain healthcare professionals from medical malpractice claims. See Rodríguez, 2023 WL 6976566, at *3-7 (citing P.R. Laws. Ann. tit. 26, § 4105). The plaintiffs' claim of error turns on the validity of the district court's core determination that Dr. Báez was immune from suit for all relevant conduct. An examination of the record leads us to conclude that Dr. Báez is immune.

Puerto Rico law teaches that:

> No healthcare professional (employee or contractor) shall be named as defendant in a civil action for damages arising out of professional negligence (malpractice) in the performance of his profession, while such professional was acting in accordance with his duties and responsibilities, including teaching, as an employee of the Commonwealth of Puerto Rico . . . .

P.R. Laws Ann. tit. 26, § 4105. We have held that this portion of the statute "plainly immunize[s] healthcare professionals from malpractice claims if they meet the listed professional criteria."

- 14 -

Hosp. San Antonio, Inc. v. Oquendo-Lorenzo, 47 F.4th 1, 10 (1st Cir. 2022). To receive immunity, the healthcare professional must have been "acting as an employee of the government at the time of the events giving rise to the suit." Frances-Colon v. Ramirez, 107 F.3d 62, 64 (1st Cir. 1997).

We recognize that the party raising an immunity defense (here, Dr. Báez) bears the burden of showing immunity. See Pérez-Pérez v. Hosp. Episcopal San Lucas, Inc., 113 F.4th 1, 8 & n.4 (1st Cir. 2024). Our review of the record persuades us that Dr. Báez has carried that burden.

We focus on Dr. Báez because Encompass's claim of immunity is wholly derivative of Dr. Báez's claim.[8] There is no dispute that Dr. Báez satisfies the first two criteria for immunity: he is a healthcare professional, and the suit seeks "damages arising out of professional negligence (malpractice) in the performance of his profession." P.R. Laws Ann. tit. 26, § 4105. The only contested fact, then, is whether the alleged malpractice occurred "while such professional was acting in accordance with his duties and responsibilities, including teaching, as an employee of the Commonwealth of Puerto Rico." Id.

---

[8] Encompass takes the position that it shares Dr. Báez's immunity with respect to care rendered by Dr. Báez at Encompass's facility. The plaintiffs have not argued that Encompass may be liable for Dr. Báez's negligence even if Dr. Báez himself is immune from suit. Any argument that Encompass does not share Dr. Báez's immunity is therefore waived. See Zannino, 895 F.2d at 17.

- 15 -

At the time of the alleged malpractice, Dr. Báez was an assistant professor at UPR, supervising the UPR residents who cared for the decedent. These facts — which are not contradicted by any other evidence in the record — clearly indicate that Dr. Báez was acting "in accordance with his duties and responsibilities, including teaching, as an employee of the Commonwealth of Puerto Rico." Id.

The plaintiffs rejoin that a trialworthy question of fact remains as to whether Dr. Báez was acting at all relevant times as a UPR faculty member. They reason that because Dr. Báez was the attending physician, any non-resident doctor who treated the decedent (such as Dr. Bellaflores) did so "under [Dr. Báez's] responsibility." This means — the plaintiffs suggest — that Dr. Báez did not act at all times as an employee of UPR.

The plaintiffs' suggestion, though, is bereft of factual support. They at no time set forth any specific facts sufficient to support an inference that Dr. Báez was negligent either with respect to Dr. Bellaflores's care[9] or with respect to care rendered by any other doctor apart from the UPR residents. As the nonmoving party, the plaintiffs were "required to set forth specific facts demonstrating a trialworthy issue." Nieves, 7 F.3d at 279. They

_____

[9] In point of fact, the plaintiffs have proffered no facts sufficient to support a finding that Dr. Bellaflores himself was in any way negligent.

have failed to do so: they point to no evidence indicating that the involvement of Dr. Bellaflores in any way implicated Dr. Báez. Importantly, they have adduced no evidence showing that Dr. Báez supervised Dr. Bellaflores. Nor have they offered proof that, as a general matter, a doctor who provides a consultation to a patient does so "under [the] responsibility" of the attending physician.

Similarly, the plaintiffs challenge Dr. Báez's immunity on the ground that the defendants offered no evidence that a resident was "present at all times" during the hospitalization. Consequently, their thesis runs, Dr. Báez was not acting at all times as a supervising physician. But for this reasoning to bear weight, the plaintiffs would have to (at a minimum) point to some evidence that no resident was present at some relevant point in time. The plaintiffs have offered no such evidence.

The plaintiffs also note that their allegations of malpractice are based on Dr. Báez's omissions, not his actions. But that observation does not compel the conclusion that Dr. Báez acted outside of his role as a UPR employee. A doctor decides to prescribe a course of medical treatment in the same capacity in which he decides to refrain from prescribing a course of medical treatment. Any omission made by Dr. Báez, therefore, was made in the same supervisory role in which his actions were undertaken.

To say more would be to paint the lily. Here, the plaintiffs do not "succeed[] in adducing specific facts

demonstrating that a trialworthy issue remains on some material fact." Cadle Co., 116 F.3d at 961. Dr. Báez's assertion that he acted only as a healthcare worker employed by the Commonwealth stands unrebutted. He is, therefore, immune for purposes of this action. Consequently, summary judgment was appropriately granted in favor of Dr. Báez.

## V

We next turn to the plaintiffs' claims against Encompass. The plaintiffs suggest that summary judgment was inappropriate because Encompass is vicariously liable for the negligent actions of all of its personnel who provided care to the decedent, including doctors and medical staff who are not immune from suit (such as Dr. Bellaflores). The fly in the ointment, however, is that the plaintiffs did not make this argument in the district court. There, the plaintiffs contested only Dr. Báez's immunity. "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992); see B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 40 (1st Cir. 2004) ("Advancing one theory in the trial court and jettisoning it in favor of another (previously unarticulated) theory in the court

of appeals . . . . violates a prudential principle firmly embedded in our jurisprudence . . . .").

The plaintiffs offer us no sufficient justification for overlooking this hoary precept. See Tutor Perini Corp. v. Banc of Am. Sec. LLC, 842 F.3d 71, 84-85 (1st Cir. 2016) (rejecting appellant's new theory when appellant "makes no argument that any exception to the raise-or-waive rule applies"). Nor do they make any showing of extraordinary circumstances. We hold, therefore, that the plaintiffs newly minted argument is waived.

In a last-ditch effort to save the day, the plaintiffs declare that Dr. Báez was employed by Encompass. But this declaration appears to rest on a triumph of hope over reason. There is no record evidence even hinting that the factual predicate on which this declaration rests is true. For aught that appears, the suggestion that Dr. Báez was an employee of Encompass has been plucked out of thin air. And as we have said, such "conclusory allegations, improbable inferences, and unsupported speculation" do not create a genuine issue of material fact. Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 32 (1st Cir. 2015) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

**VI**

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed**.

- 19 -