April 28, 2026

**Supreme Court**

No. 2024-127-Appeal.
(PC 23-1202)

PACE Organization of Rhode Island      :

v.      :

Sarah Frew, in her capacity as Tax      :
Assessor for the City of East
Providence.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

PACE Organization of Rhode Island   :

v.   :

Sarah Frew, in her capacity as Tax   :
Assessor for the City of East
Providence.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The plaintiff, PACE Organization of Rhode Island (PACE), appeals from a Superior Court judgment entered in favor of the defendant, Sarah Frew, in her capacity as Tax Assessor for the City of East Providence (the tax assessor or defendant), following the grant of the defendant's motion for summary judgment. On appeal, the plaintiff argues that the hearing justice erred by holding that G.L. 1956 § 44-3-3(a)(12) was ambiguous. After considering the parties' arguments and the record below, and for the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

PACE "is one of many [f]ederally certified 'Programs of All-inclusive Care for the Elderly'" and is the only such program in Rhode Island.[1] Its mission is to assist elderly people "mov[e] away from institution-based, long-term care toward a community-based model that provides affordable, comprehensive, and integrated health care and social services." To be federally certified as a PACE organization, it must "primarily serve Medicaid eligible elderly people." To accomplish that mission, PACE provides "comprehensive health and social services for Medicaid eligible * * * adults aged 55 and older" who live in its area of coverage. It provides its "members with primary care, nursing care, day center services, prescriptions, nutrition, rehabilitation, home care, transportation, social work, life enrichment, specialty care and behavioral health services."

PACE is additionally required to follow federal regulations in determining who is eligible to participate in its services. *See* 42 C.F.R. § 460.150. The "basic eligibility requirements" include that an individual:

"(1) Be 55 years of age or older.

"(2) Be determined by the State administering agency to need the level of care required under the State Medicaid plan for coverage of nursing facility services, which

---

[1] The information concerning PACE is derived from an affidavit of Joan Kwiatkowski, the Chief Executive Officer of PACE Organization of Rhode Island.

indicates that the individual's health status is comparable to the health status of individuals who have participated in the PACE demonstration waiver programs.

"(3) Reside in the service area of the PACE organization.

"(4) Meet any additional program specific eligibility conditions imposed under the PACE program agreement."
Section 460.150(b)(1)-(4).

Notably, "[e]ligibility to enroll in a PACE program is not restricted to an individual who is either a Medicare beneficiary or Medicaid beneficiary." Section 460.150(d). Rather, "[a] potential PACE enrollee may be, but is not required to be, any or all of the following: (1) Entitled to Medicare Part A[;] (2) Enrolled under Medicare Part B[; or] (3) Eligible for Medicaid." Section 460.150(d)(1)-(3). PACE reports that ninety-eight percent of its participants "are elderly people who also qualify for Medicaid * * *." However, it also maintains that "[n]o participant's socioeconomic status, income, and/or financial status has impacted their eligibility to receive (in full or in part) the services offered by [PACE]."

PACE's administrative offices and one of its day care centers were located in Providence from August 6, 2007, until some point in 2022, when it relocated to 10 Tripps Lane in East Providence (the property). PACE uses the property to provide its participants with adult day services, meals, a host of medical services, personal care, and other types of general support. At some point after purchasing the property, PACE received a tax bill from the tax assessor. On August 22, 2022, PACE applied

for a tax exemption on the property, claiming that it was eligible pursuant to § 44-3-3(a)(12), which provides:

> "The following property is exempt from taxation: * * * Property, real and personal, held for, or by, an incorporated library, society, or any free public library, or any free public library society, so far as the property is held exclusively for library purposes, or for the aid or support of the aged poor, or poor friendless children, or the poor generally, or for a nonprofit hospital for the sick or disabled[.]"

PACE submitted that it met the requirements for such an exemption because it is an organization that provides assistance to the aged poor.

The tax assessor denied that application on November 18, 2022. In her denial letter, she noted that PACE is neither a library nor a nonprofit hospital. She further explained that § 44-3-3(a)(12) requires "that the facility must either be a *library or society* organized for the support of the aged poor, or poor friendless children, or the poor generally." In its application, PACE indicated that "most" of its participants are eligible for Medicare and Medicaid; however, the tax assessor asserted that she determined, based upon PACE's website, that its mission is to assist elderly people generally and not necessarily those elderly people who are poor. For those reasons, she denied PACE's application.

PACE then appealed the tax assessor's decision to the East Providence Tax Board of Assessment Review (the tax board), submitting a memorandum in support

of its appeal on December 9, 2022.[2]  In that memorandum PACE stated that, "[i]n Rhode Island, 98% of the people served by PACE are low-income elderly, and almost all of the rest are low-income, but just above the limits of Medicaid. Only one or two participants at any time are fully self-pay."  It then contended that the tax assessor's interpretation of § 44-3-3(a)(12) was incorrect, resulting in an erroneous denial of its application, because the statute neither requires that an organization seeking an exemption be either a library or society, nor does it require an organization to exclusively serve the aged poor.  On February 13, 2023, the tax board denied PACE's appeal.

Thereafter, PACE appealed its denial from the tax board to the Superior Court, filing its petition on March 10, 2023, which the tax assessor answered.  PACE then filed a motion for summary judgment on July 24, 2023, which the tax assessor objected to on November 29, 2023, and submitted her own cross-motion for summary judgment that same day.

In its memorandum in support of its motion for summary judgment, PACE argued that the plain language of § 44-3-3(a)(12) does not require that an entity seeking an exemption be either a library or a society; rather, it only requires that such an entity hold the property in question "for the aid or support of the aged poor."

---

[2] We note that PACE paid the disputed property tax as required to pursue its tax appeal.

PACE provided its interpretation of the statute, submitting that its language creates three distinct instances in which a property tax exemption may be claimed. The first instance is when the property is held "for, or by, an incorporated library, society, or any free public library, or any free public library society, so far as the property is held exclusively for library purposes[.]" (Quoting § 44-3-3(a)(12).) The second instance is when any entity—not just a library or a society—holds property "for the aid or support of the aged poor, or poor friendless children, or for the poor generally[.]" (Quoting *id.*)

The third and final instance, as submitted by PACE, occurs when a property is held by "a nonprofit hospital for the sick or disabled[.]" (Quoting § 44-3-3(a)(12).) PACE contended that, because it utilizes its property "for the aid or support of the aged poor[,]" the property qualifies for an exemption in the second instance. Finally, PACE argued that the property need not be used exclusively "for the aid or support of the aged poor" because the term "exclusively" only attaches to an actor that is either a library or society required to use its property "exclusively for library purposes[.]"

The tax assessor responded, arguing that an entity claiming a tax exemption under § 44-3-3(a)(12) is required to be one of the actors listed in the statute; that is either a library, library society, or a nonprofit hospital. She further submitted that the plain language of the statute requires an entity that is either "a library or library

society" be organized specifically "to support the aged poor, or poor friendless children, or the poor generally," or in the case of a nonprofit hospital, to assist "the sick or disabled." The tax assessor further noted that, even if PACE is an entity contemplated by the statute, it is still required to be organized exclusively for the support of the aged poor and, because PACE admits that it is not, it would still fail to meet the requirements for the tax exemption. Finally, she points out that, if the statute were to be determined ambiguous, this Court's precedent would require the Superior Court to resolve that ambiguity against the taxpayer.

Both motions were heard before a justice of the Superior Court on February 5, 2024; and on March 6, 2024, a written decision was issued. In his decision, the hearing justice found that the interpretation of § 44-3-3(a)(12) from each party was reasonable in light of the statute's poor draftsmanship, and he ultimately found that the statute was ambiguous. He then considered the statute's long legislative history—from its first publication in 1857, its subsequent amendments, and up to its current form—to resolve the ambiguity. In so doing, the hearing justice determined that the history served as "evidence [of] an intention by the Legislature to provide tax-exempt status to specific entities enumerated under the [s]tatute." That determination impacted his interpretation of the statute's current form, and he found that "certain aspects of its drafting indicate an intention to exempt on the basis of the type of entity rather than the type of use." The hearing justice concluded that

- 7 -

"§ 44-3-3(a)(12) affords tax-exempt status to the specific types of entities enumerated under the [s]tatute, provided that such entities exclusively utilize the property in accordance with the [s]tatute's permissible uses."

The hearing justice ultimately rejected PACE's interpretation, denied PACE's motion for summary judgment, and granted the tax assessor's cross-motion, "[b]ecause exemption is not to be presumed and any doubt or ambiguity must be resolved in favor of taxation * * *." An order to that effect entered on March 15, 2024, and judgment in favor of the tax assessor entered the same day. This appeal follows.

## II

## Standard of Review

"This Court reviews *de novo* a decision of the Superior Court to grant summary judgment, applying the same rules and standards as those employed by the justice below." *Riccitelli v. Town of North Providence by and through Vallee*, 308 A.3d 977, 981-82 (R.I. 2024) (quoting *Benaski v. Weinberg*, 899 A.2d 499, 502 (R.I. 2006)). "We will affirm a trial court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Bayview Loan Servicing, LLC v. Providence Business*

*Loan Fund, Inc.*, 200 A.3d 153, 156 (R.I. 2019) (brackets omitted) (quoting *Cancel v. City of Providence*, 187 A.3d 347, 350 (R.I. 2018)).

"[W]hen presented with questions of statutory interpretation, this Court engages in a *de novo* review." *Bayview Loan Servicing, LLC*, 200 A.3d at 156-57 (quoting *In re Tetreault*, 11 A.3d 635, 639 (R.I. 2011)).

## III

### Discussion

The sole issue in this case is the proper interpretation of § 44-3-3(a)(12).  The statute provides, in its entirety:

> "The following property is exempt from taxation: * * * Property, real and personal, held for, or by, an incorporated library, society, or any free public library, or any free public library society, so far as the property is held exclusively for library purposes, or for the aid or support of the aged poor, or poor friendless children, or the poor generally, or for a nonprofit hospital for the sick or disabled[.]" Section 44-3-3(a)(12).

"It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Capital Video Corporation v. Bevilacqua*, 338 A.3d 333, 338 (R.I. 2025) (quoting *Newport and New Road, LLC v. Hazard*, 296 A.3d 92, 94 (R.I. 2023)).  "This is particularly true where the Legislature has not defined or qualified the words used within the statute." *Rhode Island Truck Center, LLC v. Daimler Trucks North America, LLC*, 338 A.3d 1056, 1060 (R.I. 2025)

(quoting *D'Amico v. Johnston Partners*, 866 A.2d 1222, 1224 (R.I. 2005)). "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *D'Amico*, 866 A.2d at 1224 (quoting *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I. 2001)).

"If a statute is ambiguous—that is, 'susceptible of more than one construction'—the Court will 'adopt the construction that comports with constitutional imperatives.'" *Rhode Island Truck Center, LLC*, 338 A.3d at 1061 (quoting *In re Kyle S.*, 692 A.2d 329, 334 (R.I. 1997)). "Because ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate[,] the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner." *In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 505 n.30 (R.I. 2011) (deletion omitted) (quoting *Lazarus v. Sherman*, 10 A.3d 456, 464 (R.I. 2011)). "It is only if the statutory language is ambiguous that we will turn to our well-established maxims of statutory construction in an effort to glean the intent of the Legislature." *Rhode Island Truck Center, LLC*, 338 A.3d at 1061 (quoting *Johnson v. Johnson*, 264 A.3d 835, 838 (R.I. 2021)). Additionally, "[t]his Court has held that our duty is to 'strictly construe statutory tax exemptions in favor of the taxing authority.'" *Polseno Properties*

- 10 -

*Management, LLC v. Keeble*, 288 A.3d 988, 992 (R.I. 2023) (quoting *Delta Airlines, Inc. v. Neary*, 785 A.2d 1123, 1126 (R.I. 2001)).

The hearing justice's ultimate construction of § 44-3-3(a)(12)—which he derived after he determined that it was ambiguous—requires an entity claiming the exemption to be (1) an enumerated entity which (2) uses the exempted property for an enumerated use (3) exclusively. Thus, he reasoned, the tax exemption did not apply to PACE. Although the hearing justice relied on an historical analysis to reach that conclusion, we take a more direct route to arrive at the same destination. We concur, however, with the hearing justice's observation that the statute is the victim of "confusing punctuations and unclear phrasing that renders its drafting inartful at best."

Nevertheless, the statute clearly specifies several entities in two distinct groups; the first group includes "an incorporated library," a "society," "any free public library," and "any free public library society," while the second group consists of one entity, a "nonprofit hospital[.]" Section 44-3-3(a)(12). The inclusion of those specific entities indicates an intention by the General Assembly that a claimant must be one of those several entities. *See id.*

Immediately following the first group of entities, the statute provides several distinct uses that are applicable to them: "so far as the property is held exclusively for library purposes, or for the aid or support of the aged poor, or poor friendless

- 11 -

children, or the poor generally[.]" Section 44-3-3(a)(12). The inclusion of this list of uses, coming right after the first group of entities and connected with the phrase "so far as the property is held exclusively" allows a reader to reasonably deduce that those entities must utilize their property for an enumerated use. Likewise, the same is true for the second group; to claim the exemption a reasonable reader could determine that the entity must be a "nonprofit hospital" using its property "for the sick or disabled." *Id.*

PACE cautions us that this reading is unreasonable because libraries, free public libraries, and free public library societies, of the first group, do not engage exclusively in the support of the poor, whether they are aged, orphaned, or just poor generally; therefore, those terms would be mere surplusage since none of the first group actors could claim an exemption under those uses. *See St. Clare Home v. Donnelly*, 117 R.I. 464, 470, 368 A.2d 1214, 1217-18 (1977) ("No sentence, clause or word should be construed as unmeaning and surplusage, if a construction can be legitimately found which will give force to and preserve all the words of the statute."). In making that argument, PACE ignores the choice of the General Assembly to include the term "society" in the first group of actors. Section 44-3-3(a)(12). "Society" is defined as "[a]n association or company of persons ([usually] unincorporated) united by mutual consent, to deliberate, determine, and act jointly for a common purpose[.]" Black's Law Dictionary 1679 (12th ed. 2024).

- 12 -

It is synonymous with "organization." *Id.* Thus, it includes a broad category of entities that can take advantage of the subsection's exemption by using their property "for the aid or support of the aged poor, or poor friendless children, or the poor generally[.]" Section 44-3-3(a)(12). We believe that this reading of the subsection is also reasonable.

We are troubled, however, upon slightly closer scrutiny of the statute. The first group of actors provided in § 44-3-3(a)(12) consists of "an incorporated library," a "society," "any free public library," and "any free public library society," all of which are listed in succession. Section 44-3-3(a)(12). "The doctrine of *ejusdem generis* provides that when 'a series of specific terms in a statute is followed by a general term[,] the general term, will be construed to embrace only additional examples of a similar nature as those enumerated.'" *State v. Oliveira*, 882 A.2d 1097, 1113-14 (R.I. 2005) (quoting *State v. Dearmas*, 841 A.2d 659, 667 (R.I. 2004)). Although the term "society" has a general definition that broadly encompasses a host of entities, it is used in a list with other entities that are more specific to libraries. *See* § 44-3-3(a)(12). Applying the doctrine of *ejusdem generis*, it is also reasonable that a reader would determine that the term "society" must be read as necessarily being a type of library organization.

Thus, the subsection can reasonably be read in more than one manner. In one reading, the term "society" is open in nature, allowing for many entities to receive a

tax exemption. The other reading would limit such a "society" to one that is connected to a library in some manner, given its inclusion amongst several library entities. Because we believe both readings are reasonable, we deem § 44-3-3(a)(12) ambiguous, as it applies in the context of this case.[3] *See Rhode Island Truck Center, LLC*, 338 A.3d at 1061 (holding that ambiguity occurs when a statute is "susceptible of more than one construction") (quoting *In re Kyle S.*, 692 A.2d at 334).

The General Assembly has declared that "[a]ll real property in the state, and all personal property belonging to the inhabitants of the state * * * are liable to taxation unless otherwise specially provided." Section 44-3-1. Because we are bound to construe statutes which grant tax exemptions strictly, *see Polseno Properties Management*, 288 A.3d at 992, "if a doubt or ambiguity exist[s] in a statute granting an exemption, such doubt must be resolved in favor of taxation[,]" *Killoran*, 447 A.2d at 371. Therefore, we need not engage in any further analysis to resolve the ambiguity. "To say more would be to paint the lily." *Rodríguez v. Encompass Health Rehabilitation Hospital of San Juan, Inc.*, 126 F.4th 773, 783 (1st Cir. 2025) (Selya, J.).

---

[3] *See In re Toryn C.*, 982 A.2d 592, 595 (R.I. 2009) ("Our holding is limited to the statute as applied in this case.") (quoting *In re Jeramie N.*, 688 A.2d 825, 830 (R.I. 1997)).

## IV

## Conclusion

For the reasons set forth herein, the judgment of the Superior Court is affirmed, and the record of this case shall be returned thereto.

Justice Goldberg participated in the decision but retired prior to its publication.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | PACE Organization of Rhode Island v. Sarah Frew, in her capacity as Tax Assessor for the City of East Providence. |
| **Case Number** | No. 2024-127-Appeal. (PC 23-1202) |
| **Date Opinion Filed** | April 28, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Lauren E. Jones, Esq. |
| | For Defendant:<br><br>Michael J. Marcello, Esq. |